[No. C008219. Third Dist. Mar. 25, 1991.]

NATIONAL UNION FIRE INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
LYNETTE C., Defendant, Cross-complainant and Appellant.

1074

COUNSEL

Lenard & Lyde and Robert L. Davis for Defendant, Cross-complainant and Appellant.

Matheny, Poidmore & Sears, Michael A. Bishop, Wahlberg & Carron and Donald Wahlberg for Plaintiff, Cross-defendant and Respondent.

OPINION

DAVIS, J.—In this insurance coverage dispute, Lynette C. (Lynette) appeals from a summary judgment in favor of National Union Fire Insurance Company (National). The only issue on appeal is whether the foster parents' liability insurance policy issued by National affords coverage to Debra Lopes (Debra), Lynette's foster mother who negligently failed to protect Lynette from sexual molestation by Duane Lopes (Duane), Lynette's foster father. We conclude there is coverage for Debra, reverse the judgment and remand the matter.

In August 1980, when Lynette was 10 years old, she was placed by Colusa County as a foster child with Debra and Duane. Beginning in October or November 1980, and continuing until Lynette was removed from the Lopeses' home in May 1983, Duane repeatedly sexually molested Lynette.

As a result of these molestations, Duane in November 1984 pleaded guilty to violating Penal Code section 288, subdivision (a) (lewd or lascivious acts upon a child under 14 years of age).

In August 1987, following three years of mental health treatment arising from the molestations, Lynette sued Duane and Debra (hereafter, the Lopes action). As to Debra, Lynette alleged she was negligent in allowing Lynette's placement in the Lopeses' foster home because Debra knew, or should have known, that Duane had a propensity to sexually molest children, and Debra was negligent in not protecting Lynette from Duane's molestations.

In February 1988, National filed a complaint for declaratory relief, contending that neither Duane nor Debra was covered under the National insurance policy for the allegations in the Lopes action.[1]

Pursuant to stipulation, the Lopes action was tried before a judge as an uncontested matter in September 1988. Judgment was rendered against Duane and Debra, jointly and severally, in the amount of $1,250,000. The trial court found that Debra's failure to use reasonable care to prevent Lynette's molestation injuries "was, along with [Duane's] batteries, a concurring legal cause of harm" to Lynette.[2]

In the present matter, both Lynette and National moved for summary judgment. Based on exclusion (b) set forth in the National policy, the trial court determined Debra was not covered and granted summary judgment for National.

### DISCUSSION

There are three provisions of the National insurance policy relevant here. The first is the basic coverage clause, which provides: "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of any act, error or omission of the Insured and arising out of the Insured's activities as a Foster Parent occurring while the

---

[1] The National policy was issued to the Colusa County Department of Social Welfare and covered foster parents, like Duane and Debra, designated by the county. Lynette concedes that Duane's sexual molestations are not covered under the National policy.

[2] After obtaining this judgment, Lynette cross-complained in National's declaratory relief action and sought satisfaction of the judgment from National.

foster child is in the care and custody of the Foster Parent. Such coverage hereunder shall include, but not be limited to, bodily injury, property damage or personal injury for which the Insured is held legally liable."

The other two relevant provisions are exclusion clauses. Exclusion (b) specifies that the policy does not apply "to any dishonest, fraudulent, criminal or malicious act, error or omission of an Insured." Exclusion (1) states the policy is inapplicable "to licentious, immoral, or sexual behavior intended to lead to or culminating in any sexual act. However, notwithstanding the foregoing, the Insured shall be protected under the terms of this policy as to any claim upon which suit may be brought against him, by reason of any alleged licentious, immoral or sexual behavior by an Insured unless a judgment or final adjudication thereof adverse to the Insured shall establish that acts of active or deliberate, licentious, immoral or sexual behavior committed by the Insured with actual licentious or immoral purpose and intent were material to the cause of action so adjudicated."

Lynette contends that the exception set forth in the second sentence of exclusion (1), read in light of the basic coverage clause, provides coverage to Debra.[3]

■ The interpretation of an insurance policy, like any contract, is a question of law. (*Ray* v. *Farmers Ins. Exchange* (1988) 200 Cal.App.3d 1411, 1415-1416 [246 Cal.Rptr. 593].) When that interpretation does not depend upon the credibility of extrinsic evidence—and that is the case here—an appellate court may independently determine the policy's meaning regardless of what the trial court may have concluded. (*Ibid.*; see *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Any ambiguities in the policy are construed in favor of the insured. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 464 [113 Cal.Rptr. 711, 521 P.2d 1103].) ■ Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].) However, strict construction does not mean strained construction; under the guise of strict construction, we may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. (*Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 533 [190 Cal.Rptr. 425].)

---

[3] Although National argued in the summary judgment proceedings that exclusion (1) was not placed in the foster parents policy until 1984—subsequent to Duane's molestations of Lynette—National had earlier admitted that exclusion (1) was part of the policy covering Duane and Debra at the time of such molestations. The National policy applies to acts, errors or omissions that occur during the policy period. The trial court made a finding confirming National's admission. National does not dispute this finding in this appeal.

■ The words used in an insurance policy are construed in their ordinary and popular sense. (*Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83 [286 P.2d 816]; *Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 272 [203 Cal.Rptr. 672].) Finally, the policy is construed as a whole, each clause helping to interpret the other. (*McBride* v. *Farmers Ins. Group* (1982) 130 Cal.App.3d 258, 260-261 [181 Cal.Rptr. 539, 42 A.L.R.4th 1139].)

■ Exclusion (1) is the focus of this case. Again, that exclusion states the policy does not apply "to licentious, immoral, or sexual behavior intended to lead to or culminating in any sexual act. However, notwithstanding the foregoing, the Insured shall be protected under the terms of this policy as to any claim upon which suit may be brought against him, by reason of any alleged licentious, immoral or sexual behavior by an Insured unless a judgment or final adjudication thereof adverse to the Insured shall establish that acts of active or deliberate, licentious, immoral or sexual behavior committed by the Insured with actual licentious or immoral purpose and intent were material to the cause of action so adjudicated."

Relying principally upon the distinction between "the Insured" and "an Insured" in the exclusion (1) exception, Lynette argues the exception applies to the situation presented here: where one foster parent, like Duane (an Insured), molests a foster child, while the other foster parent, like Debra (the Insured), is at most simply negligent in failing to prevent the molestation. In fact, Lynette argues this is the only possible application of exclusion (1)'s exception. According to Lynette, in light of exclusion (b)'s exclusion for criminal acts, the exception to exclusion (1) is conceivably applicable in only two situations: the first is where there is a noncriminal sexual act; the second is the situation presented by this case. Lynette argues that since there is no sexual act involving a child upon which a legal claim may be brought that is not criminal, the second situation is the only conceivable application and therefore Debra is covered. Moreover, argues Lynette, the exception to exclusion (1), which preserves protection to one insured from claims based upon the sexual behavior of another insured, is a specific provision which overrides the general provision of exclusion (b) excluding criminal acts. According to Lynette, if her interpretation is not accepted, the exclusion (1) exception is rendered meaningless, contrary to settled principles of insurance policy interpretation.

Lynette further argues that if her interpretation is not the only possible one, at a minimum it is a reasonable interpretation of an ambiguous provision that must be construed in favor of coverage for the insured, Debra.

One can conceive of a noncriminal situation to which the exclusion (1) exception could apply—for example, one foster parent's noncriminal sexual

harassment of another adult related to foster parent activity for which the other foster parent would be vicariously liable. (See *American States Ins. Co.* v. *Borbor by Borbor* (9th Cir. 1987) 826 F.2d 888.) But the very stretch required in finding that applicability argues strongly in favor of Lynette's reasonable interpretation position.

Moreover, Lynette is correct that "the Insured" refers to a particular insured and that "an Insured" refers to any insured under the policy. Decisional and statutory law recognize this point. (*Allstate Ins. Co.* v. *Condon* (1988) 198 Cal.App.3d 148, 152-154 [243 Cal.Rptr. 623]; *Allstate Ins. Co.* v. *Gilbert* (9th Cir. 1988) 852 F.2d 449, 453-454; *American States Ins. Co.* v. *Borbor by Borbor, supra*, 826 F.2d at p. 894; *Arenson* v. *Nat. Automobile & Cas. Ins. Co., supra*, 45 Cal.2d 81, 83-84; Ins. Code, § 11580.1, subd. (c)(8).) Undoubtedly, exclusion (1)'s exception, in isolation, can reasonably be read to protect one insured against claims based on a second insured's sexual conduct so long as the first insured has not engaged directly in that conduct. When that exception is read in light of the basic coverage clause and exclusion (b), there may be an ambiguity created but under settled principles of insurance contract interpretation that ambiguity must be construed against National. (*Silberg* v. *California Life Ins. Co., supra*, 11 Cal.3d at p. 464.)

In short, we think Lynette's interpretation of the insurance contract is a reasonable one: the exception set forth in exclusion (1), read in light of the basic coverage clause, either reasonably provides coverage for Debra or, at a minimum, creates an ambiguity in favor of coverage for Debra. Furthermore, Lynette's interpretation accords with the reasonable expectations of the ordinary person. (See *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 149 [194 Cal.Rptr. 66].) After all, the policy is a "Foster Parent*s* Liability" policy. (Italics added.) The distinction between "the Insured" and "an Insured" in exclusion (1)'s exception for sexual conduct reasonably contemplates one parent engaging in such conduct while the other parent does not do so. The basic coverage clause is a broad one consistent with coverage for a foster parent who does not engage directly in prohibited sexual behavior.

These conclusions, however, do not end our analysis. National raises a number of matters worthy of consideration. We turn to those issues now.

First, National contends this case is indistinguishable from *Allstate Ins. Co.* v. *Gilbert, supra*, 852 F.2d 449.

In that case, Albert Gilbert was alleged to have engaged in lewd or lascivious acts with his neighbor, Jennifer, a child under 14 years of age.

(Pen. Code, § 288, subd.(a).) Albert's wife, Margaret, was alleged to have been negligent in failing to take steps to prevent these molestations when she knew Albert had a propensity for committing and intended to commit such acts. (852 F.2d at p. 450.) The Gilberts were insured under a homeowner's policy which specifically excluded " '[b]odily injury or property damage intentionally caused by an insured person.' " (*Ibid.*)

The *Gilbert* court held there was no duty to defend or indemnify Margaret because the policy expressly excluded coverage for injuries intentionally caused by "an insured person," which meant any insured person under the policy and therefore included Albert. (852 F.2d at pp. 453-454.)

Similar to the insurance policy in *Gilbert*, the National policy expressly excludes coverage for any criminal act of "an Insured." However, the policy in *Gilbert* contained no Exclusion (1) exception. And that exception is a provision more specifically applicable to the facts here than exclusion (b)'s general exclusion for criminal acts. (See Code Civ. Proc., § 1859; *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A. G.* (1970) 3 Cal.3d 434, 442 [91 Cal.Rptr. 6, 476 P.2d 406] [insurance policies are construed under the same rules governing interpretation of other contracts].) For these reasons, *Gilbert* is distinguishable.

Relying on *St. Paul Fire & Marine Ins. Co.* v. *Coss* (1978) 80 Cal.App.3d 888 [145 Cal.Rptr. 836], National next argues that coverage cannot be found in an exclusion clause. True enough, but Lynette's point is well taken that she is reading an exception to exclusion (1) in light of the basic coverage clause. Furthermore, *Coss* is distinguishable.

In *Coss*, a general contractor was sued by a homeowner for failing to construct the home in a workmanlike manner. (80 Cal.App.3d at p. 890.) The contractor sought coverage under his comprehensive general liability insurance policy. The basic coverage clause and an endorsement to that policy foreclosed the coverage sought. (*Id.* at pp. 891-894.) That policy also contained five exclusions precluding coverage for the homeowner's claim. (*Id.* at p. 895.) However, a sixth exclusion, exclusion (a), provided: " 'This insurance does not apply: (a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner. . . .' " (*Ibid.*)

The contractor in *Coss* argued that exclusion (a) extended the policy to cover damages resulting from the homeowner's claim—a breach of warranty of fitness for the construction work performed. (80 Cal.App.3d at

pp. 894-895.) The court in *Coss* disagreed, explaining: "As initially noted in this opinion, we concluded that the St. Paul policy did not intend to, nor did it, extend coverage to include reimbursement (in some form or another) to a builder for expenditures required to correct his own defective product made so by his poor workmanship and use of substandard materials. The California and Federal cases cited are in accord that the exclusion cannot act as an additional grant or extension of coverage. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. (*Haugan* v. *Home Indemnity Company* (1972) 86 S.D. 406 [197 N.W.2d 18, 22].[1] For the reasons stated, exclusion (a) is not in conflict with the other exclusions; therefore, we do not find the ambiguity urged by Coss." (*Id.* at p. 896.)

*Coss* is distinguishable on a number of points. Unlike the insurance policy in *Coss*, the basic coverage clause of the National policy does not foreclose coverage here. Nor is there any endorsement to the National policy foreclosing coverage. And unlike exclusion (a) in *Coss*, exclusion (1) here creates an ambiguity favorable to coverage. Moreover, although it is easy to say that an exclusion cannot act to broaden coverage (see *Weedo* v. *Stone-E-Brick, Inc.* (1979) 81 N.J. 233 [405 A.2d 788, 795], cited by National), it is just as easy to say that an *exception* to an exclusion can act to broaden coverage. Finally, the passage in *Coss* that "California and Federal cases . . . are in accord that the exclusion cannot act as an additional grant or extension of coverage" (80 Cal.App.3d at p. 896) pertains to a particular, standardized exclusion applicable to faulty products or work by the insured; this particular exclusion has been the subject of extensive litigation. (See *Stillwater Condominium* v. *Am. Home Assur.* (1981 Mont.) 508 F.Supp. 1075, 1077, fn. 1, and cases cited therein.) Accordingly, this passage does not convey a general principle applicable to all exclusions and exceptions.

In a related vein, National again looks to *Coss* and to the New Jersey Supreme Court decision in *Weedo*, this time for the principle that exclusions are to be read independently of one another. (*Weedo, supra,* 405 A.2d at p. 795.) That is, if any one exclusion applies there is no coverage, regardless of inferences that might be drawn from exceptions or qualifications contained in other exclusions. (*Ibid.*) *Coss* does not set forth this point and we do not find *Weedo* persuasive on it.

As with *Coss*, *Weedo* also noted that exceptions to exclusions remain "subject to and limited by all other related exclusions contained in the policy." (*Coss, supra,* 80 Cal.App.3d at p. 896; *Weedo, supra,* 405 A.2d at p. 795.) Nevertheless, the court in *Weedo* later rejected the insured's

argument that certain exceptions and exclusions produced inconsistencies, reasoning that exclusions must be read separately and not cumulatively. (405 A.2d at p. 795.) ■ We think the point made in *Coss*—that exceptions to exclusions remain subject to and limited by all other related exclusions—is sound, and we think the point applies to exclusions as well.

Cumulatively interpreting related exclusions comports with the interpretation principle noted earlier that an insurance policy must be construed as a whole, each clause helping to interpret the other. (*McBride* v. *Farmers Ins. Group, supra*, 130 Cal.App.3d at pp. 260-261.) Furthermore, if exceptions to exclusions are *subject to* and *limited by* all other related exclusions, a fortiori the same rule should apply to exclusions themselves. This is because exceptions to exclusions are somewhat analogous to coverage provisions and we construe coverage provisions broadly in favor of the insured; exclusions, by contrast, are construed strictly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at pp. 101-102.) ■ Consequently, exclusion (b)'s exclusion for criminal acts remains subject to and limited by all other related exclusions, in this case exclusion (1). Of course, under this rule, exclusion (1) remains subject to and limited by exclusion (b). Nevertheless, exclusion (1) contains an exception creating, at the least, an ambiguity that must be construed in favor of coverage for Debra.

Indirectly, National raises another salient point: that Debra is not covered because Duane engaged in acts indisputably excluded from coverage and Debra's liability is necessarily included within that excluded behavior. This point has its genesis in a trilogy of cases from this court: *Atlas Assurance Co.* v. *McCombs Corp., supra*, 146 Cal.App.3d 135; *Safeco Ins. Co.* v. *Gilstrap, supra*, 141 Cal.App.3d 524; and *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600].

In *Camara*, the insured was charged with negligently designing a dune buggy. The insured had driven the dune buggy off a steep hillside, injuring plaintiff who was the passenger. The homeowner's policy at issue excluded coverage for bodily injury arising out of the use of any vehicle owned or operated by the insured. We held that even assuming the negligent design was outside the exclusion, the only way the plaintiff could have been exposed to the claimed design risk was through the use of the dune buggy. Accordingly, the insured's alleged liability had to arise out of the use of the vehicle and therefore was excluded from coverage. (63 Cal.App.3d at pp. 50-55.)

A similar conclusion was reached in *Gilstrap*. There, the insureds were the parents of an underage motorcycle driver who took plaintiff for a ride

and crashed, injuring plaintiff. The insureds were alleged to have negligently entrusted the motorcycle to the driver. The homeowner's policy at issue contained an exclusion similar to that in *Camara*. (141 Cal.App.3d at p. 526.) We held the exclusion applied since any liability for negligent entrustment of the motorcycle (the covered risk) could arise only from the use of the motorcycle (the excluded risk). (*Id.* at pp. 530-531.)

Completing this trilogy is *Atlas Assurance Co.* In that case, some tenants at a storage facility sued the facility's owners after a facility employee stole the tenants' property. The owners were alleged to have been negligent in hiring the employee because they knew or should have known the employee was likely to steal from the facility, and were alleged to have breached the contract because the theft took place. The policy at issue excluded coverage for liability arising from any dishonest or criminal act of the insured or their employees. (146 Cal.App.3d at pp. 141-142, 148.) Again, we held the exclusion applied because neither the negligent hiring theory nor the breach of contract theory was independent of the employee's theft. (*Id.* at p. 149.)

We do not find the *Camara*-line of cases applies here. The critical distinction between that line of cases and the case before us is that in the *Camara*-line there were no ambiguities in the relevant exclusion provisions. (*Camara, supra,* 63 Cal.App.3d at pp. 53-54; *Gilstrap, supra,* 141 Cal.App.3d at pp. 526-527; *Atlas Assurance Co., supra,* 146 Cal.App.3d at p. 142.) Here, the exception to exclusion (1) renders exclusions (1) and (b) ambiguous. Moreover, in the *Camara*-line of cases, unlike in this case, there was no provision in the policy directly applicable to the covered risk. For example, in *Camara* there was no provision specifically addressing negligent design and in *Gilstrap* there was no provision directly concerning negligent entrustment. (*Ibid.*) By contrast, the exception to exclusion (1) specifically involves one foster parent's liability for the sexual acts of another foster parent.

In a related argument, National contends the exception to exclusion (1) does not literally apply to Debra because Duane's licentious behavior was necessarily adjudicated to be an essential element of the cause of action against her. This argument is specious because the exception to exclusion (1) operates to protect Debra unless an adjudication established that *Debra* (the Insured) engaged in licentious behavior with licentious purpose. Debra was never adjudicated to have engaged in such behavior. To the contrary, her culpability was limited to negligently failing to prevent Duane's molestations.

Alternatively, National asserts the exception to exclusion (1) applies only to the perpetrator of the sexual conduct at issue. This interpretation is

nonsensical. Under it, exclusion (1) and its exception would operate both to exclude and to protect coverage for the perpetrator's conduct.

That brings us to the final facet of our analysis: whether a finding of coverage for Debra contravenes public policy.

Citing *State Farm Fire & Casualty Company* v. *Huie* (N.D.Cal. 1987) 666 F.Supp. 1402, National argues there are certain acts so extreme—such as child sexual molestation—that public policy does not permit them to be insured. We agree a person cannot be insured for sexually molesting a child (see *Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326 [206 Cal.Rptr. 609]), but our agreement does not help National.

In *Huie,* a minor female was forced by one man (Trudell) into a car driven by Huie. Huie then drove the car to an isolated area where Trudell forced the victim into oral copulation and raped her. The abduction and rape occurred at gunpoint; Huie owned the gun. (666 F.Supp. at p. 1403.)

The court in *Huie* held that Huie's acts constituted criminal conduct falling within that "extreme" category for which public policy precluded insurance coverage. (666 F.Supp. at pp. 1404-1406; affd. in *State Farm Fire & Casualty Co.* v. *Bomke* (9th Cir. 1988) 849 F.2d 1218.)

It is clear that *Huie* is inapposite. Debra did not directly engage, as did Huie, in criminal or intentional acts. At most, Debra negligently failed to prevent Duane's molestations. And that is the critical point—it is Duane's acts, not Debra's, that are so "extreme" public policy forbids insuring against them.[4]

A case cited by Lynette—*Arenson* v. *Nat. Automobile & Cas. Ins. Co., supra,* 45 Cal.2d 81—illustrates the significance of this distinction.

In *Arenson,* the named insured's minor son started a fire which damaged school property; the school district obtained a judgment against the named insured for the damage. The issue was whether a personal liability policy covered the judgment. That policy excluded " '. . . destruction caused intentionally by or at the direction of the insured.' " (45 Cal.2d at p. 83.)

---

[4] The recent Supreme Court decision in *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689], does not alter our views. That case reiterated the familiar holding that since the sexual molestation of a child is inherently harmful, Insurance Code section 533 as a matter of law prohibits the molester from obtaining liability insurance coverage for his or her molestation acts. (See *Allstate Ins. Co.* v. *Kim W., supra,* 160 Cal.App.3d 326.) Because of this inherent harmfulness, added the *J. C. Penney* court, the molester's subjective intent to harm is irrelevant. Here, we are not concerned with the molester's inherently harmful acts but with the molester's wife's negligent conduct.

Under the policy, "insured" was defined to include both the named insured and the son. (*Id.* at p. 82.) Focusing on the fact the named insured was not personally at fault, the court held there was coverage. The court determined the exclusion was designed to prevent indemnifying one for his own intentionally wrongful acts and could not be construed to exclude coverage for the willful acts of another unless the policy clearly so stated. (*Id.* at pp. 83-84.) (See also *American States Ins. Co.* v. *Borbor by Borbor, supra,* 826 F.2d at pp. 891-893 [innocent or negligent spouse covered for acts of convicted child molester husband where the two of them operated a nursery school partnership].)

For these same reasons, that part of Insurance Code section 533 stating that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . ." is inapplicable. Insurance Code section 533 does not preclude insurance coverage for an "innocent" or a negligent insured under a liability insurance policy. (*Arenson, supra,* 45 Cal.2d at p. 84; *American States Ins. Co., supra,* 826 F.2d at p. 895.) As noted in *American States,* "[l]iability insurance policies are typically sold and purchased to provide indemnification for liability which may be imposed as a result of negligence. Moreover, California Insurance Code [section] 533 expressly provides that an insurer is not exonerated by the negligence of the insured." (*Ibid.*)

Another statute cited by National—Civil Code section 1668—poses a similar public policy issue. That statute provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

We agree with the position taken by the court in *American States* on this issue: "So far as [the convicted molester] is concerned, he is not entitled to indemnification. The circumstance that his interest . . . in any . . . asset he may have, may be preserved by payments American States may make to the victims of his crimes is the kind of circumstance which tends to exist in every case in which an insurance company is called upon to provide indemnification for an innocent [or negligent] insured when a loss is caused by the wilful, intentional act of another. *See, e.g., Arenson* [and other citations]. This is not the type of 'benefit' which precludes indemnification of the innocent [or negligent] insured." (826 F.2d at p. 895.) Under this reasoning, Civil Code section 1668 does not foreclose a finding of coverage for Debra on public policy grounds.

Nor does public policy flatly prohibit insurance coverage for negligent liability arising necessarily out of criminal behavior. For example, public

policy does not prohibit a landlord from obtaining liability insurance for injuries caused to tenants on the leased premises by criminal acts of third parties. (See *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 545 [134 Cal.Rptr. 29], disapproved on other grounds in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125 [211 Cal.Rptr. 356, 695 P.2d 653]; *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 804 [142 Cal.Rptr. 487]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Isaacs* v. *Huntington Memorial Hospital, supra*, at p. 135; Cal. Residential Landlord-Tenant Practice (Cont.Ed.Bar 1986) §§ 3.68-3.71, pp. 193-198; Johnson, *Landlord's Responsibility for Crime: Determining Legal Causation*, 17 Real Estate L.J. 234, 250; see also *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) We can discern no meaningful distinction between the landlord situation and the situation presented here. In fact, in the context of a nursery school partnership, the court in *American States* did not find any public policy impediment to determining there was insurance coverage for the innocent or merely negligent spouse of a convicted child molester. (826 F.2d at pp. 891-895.) In the context of a foster parent family home, neither do we.

The essential attribute of the public policy at issue is to discourage the commission of wilful torts or criminal acts. (See *American States Ins. Co.* v. *Borbor by Borbor, supra*, 826 F.2d at p. 894; *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571].) To conclude that Debra's actions are covered under the National insurance policy does no violence to this public policy. Debra was found only to have failed to use reasonable care to prevent Duane's molestations. She was not found to have aided, abetted or encouraged Duane's wilful, criminal behavior. Nor was she found to have ratified Duane's acts. As we have seen, Debra's negligence does not preclude insurance coverage under the public policy statutes of Insurance Code section 533 or Civil Code section 1668. (See *American States, supra*.)

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate the summary judgment for National and to enter an order granting a summary adjudication of issues specifying that the National insurance policy provides coverage for Debra's negligent acts as determined by the court in the Lopes action. However, because the trial court in these summary judgment proceedings determined that exclusion (b) excluded coverage, it is unclear whether the court considered another issue raised therein: the amount of coverage provided by National's three 1-year-term insurance policies—Na-

tional's so-called "stacking" issue. Consequently, we remand the matter to the trial court to determine that issue, if it still remains an issue, to make an order thereon, and to incorporate that order and the order granting summary adjudication of issue specified above in one final judgment. Appellant is awarded her costs on appeal.[5]

Marler, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied April 18, 1991, and respondent's petition for review by the Supreme Court was denied June 6, 1991.

---

[5] In the summary judgment proceedings, National also contended that the judgment in the Lopes action was obtained through fraud or collusion. The trial court below found against National on this point. National has neither contested this finding in this appeal nor filed a protective cross-appeal. Consequently, we deem that issue resolved.