JESSICA M.F., a minor, Amy L.F., a minor, Jennifer F., a minor, and Becky L.F., a minor, by their Guardian Ad Litem, David M. Skoglind, David W.F. and Diane J.F., Plaintiffs-Appellants,†

v.

LIBERTY MUTUAL FIRE INS. CO., Preferred Risk Mutual Ins. Co., State Farm Fire & Casualty Co. and All West Insurance Company, Defendants-Respondents.

RESIDENCE MUTUAL INSURANCE COMPANY, FFF Insurance Company, GGG Insurance Company and Richard J.H., Defendants.[1]

Court of Appeals

*No. 95–3547. Oral argument November 6, 1996.—Decided February 18, 1997.*

(Also reported in 561 N.W.2d 787.)

†Petition to review denied.

[1] In consideration of the confidentiality interest of the young children in this case, this court has modified the caption's identification of their grandfather.

For the plaintiffs-appellants there were briefs by *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, with *Edward E. Robinson* and *David M. Skoglind* of Milwaukee, and oral argument by *Edward E. Robinson*.

For the defendants-respondents All West Insurance Company there were briefs by *Kasdorf, Lewis & Swietlik, S.C.*, with *James M. Ryan* and *Vicki L. Arrowood* of Milwaukee, and oral argument by *James M. Ryan*.

For the defendants-respondents Liberty Mutual Fire Insurance Company there were briefs by *Borgelt, Powell, Peterson & Frauen, S.C.*, with *W. Ted Tornhel* and *Stephen M. Compton* of Milwaukee, and oral argument by *Stephen M. Compton*.

For the defendants-respondents Preferred Risk Mutual Insurance Company there were briefs and oral argument by *Paulson, Hankel & Bruner, S.C.*, with *Edward J. Bruner, Jr.* of Racine.

For the defendants-respondents State Farm Fire & Casualty Company there were briefs by *Querrey & Harrow, Ltd.*, with *Russell M. Ware* of Racine, and *Michael Resis* of Chicago, Illinois, and oral argument by *Russell M. Ware*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Jessica M.F., Amy L.F., Jennifer F., and Becky L.F. (the grandchildren), by their guardian ad litem, and their parents, David W.F. and Diane J.F., appeal from the trial court order granting summary judgment to Liberty Mutual Fire Insurance Company, Preferred Risk Mutual Insurance Company, State Farm Fire & Casualty Company, and All West Insurance Company. In the coverage phase of their bifurcated suit against their grandfather and his homeowner insurance companies, the grandchildren, together with their parents, sought to establish coverage under their grandparents' homeowner policies for

alleged injuries they suffered as a result of their grandfather's alleged sexual assaults.

On appeal, the grandchildren and their parents do not challenge the trial court's conclusion that the policies' intentional-acts exclusions preclude coverage for the alleged intentional acts of the grandfather. They do contend, however, that the trial court erred in concluding that the policies provide no coverage for the alleged negligent conduct of the grandmother. We conclude that the intentional-acts exclusions[2] also preclude coverage for the grandmother's conduct and, accordingly, we affirm.

## I. BACKGROUND

The complaint[3] alleges that for several years prior to 1993, the grandfather[4] "had sexual contact and

---

[2] As we will explain, the exclusion in all the policies at issue in this appeal applies to injuries that are *"expected or* intended" by the insured. In the context of one's responsibility for a spouse's sexual abuse of young children, one's "expectations" rather than "intentions" might seem to be more appropriate terminology. For consistency, however, we will continue to refer to the "expected or intended" exclusion as "an exclusion known in the insurance industry as an intentional-acts exclusion." *Loveridge v. Chartier*, 161 Wis. 2d 150, 166, 468 N.W.2d 146, 150 (1991).

[3] The plaintiffs filed two amended complaints replacing the fictitious insurance companies of the original complaint with the actual names of the companies. The substantive allegations, however, remained the same. Thus, for convenience, this decision will refer to the complaint.

[4] The complaints identified the defendant by name and as "an adult individual." They did not identify him as the children's grandfather. From the briefs and oral argument, however, it is apparent that the parties have litigated this case with the assumption that the trial court and this court under-

engaged in sexually explicit conduct" with each of the four grandchildren. The complaint also alleges that the grandmother:[5]

> knew or, in the exercise of reasonable care, should have known that [grandfather] was engaging in sexual contact and engaging in sexually explicit conduct with [the grandchildren]. [Grandmother] was negligent in, among other things, failing to prevent [grandfather] from committing such acts and/or in taking appropriate steps to protect [the grandchildren]. That such negligence of [grandmother] was a substantial factor in causing [the grandchildren] damages including, but not limited to, severe pain and suffering and mental anguish in the past, which in all probability will last permanently into the future.

stand that this defendant is the children's grandfather. With that understanding, and with an appreciation for confidentiality of the children, this decision will refer to him not by name, but as the grandfather.

[5] The complaint did not name the grandmother as a defendant. The parties agree, however, that under the direct action statute, § 632.24, STATS., her potential liability is linked through the plaintiffs' action against her homeowner insurance companies.

The complaints also did not identify the grandmother, except by name, and did not allege her familial relationship to either the grandfather or the grandchildren. It is apparent, however, that the parties want this court to reach the merits of this appeal with the understanding that this named individual is the grandmother. Again, with that understanding and in consideration of the grandchildren's confidentiality, we will refer to her as the grandmother.

The insurance companies[6] offered various arguments in support of their motions for summary judgment. All invoked the intentional-acts exclusion and severability clause of their respective policies.[7] Preferred Risk and Liberty Mutual also opposed coverage based on their sexual misconduct exclusions. The insurance companies also wove public policy theories into several of their arguments.

Granting summary judgment to the insurance companies on the coverage issue, the trial court concluded:

> Although the plaintiffs maintain that it is not clear that [grandfather] intended to harm the children, the intent to injure or harm is inferred by the law because the sexual assault of a minor is so certain to result in injury or harm that the law infers an intent to injure on behalf of an actor without regard to his or her claimed intent. . . .
>
> Therefore, since intentional acts are not covered under homeowner policies and sexual misconduct with a minor infers [sic] intent, the homeowner insurance companies for [grandfather] have no liability.

---

[6] The various companies provided homeowner coverage for different periods from 1980 to 1994. At this summary judgment stage, none argued that the alleged assaults did not occur during their respective periods of coverage.

[7] Each of the policies includes an intentional-acts exclusion. With only slight variations immaterial to the issues on appeal, the All West, Preferred Risk, and Liberty Mutual policies exclude coverage for bodily injury or property damage "which is expected or intended by the insured," or "from the standpoint of the insured." The State Farm policy excludes coverage for such injuries "expected or intended by an insured." Each policy also specifies that coverage "applies separately to each insured."

47

Although the plaintiffs maintain that [grandmother] should be held liable for not preventing the acts of [grandfather], case law and public policy prevent a homeowner's policy for being used to pay for sexual assaults. Moreover, [grandmother] would have no liability if it were not for the intentional acts of [grandfather]. As such, she has no homeowner's coverage because [grandfather] is prevented under each homeowner insurance policy from protection for intentional actions of which sexual conduct with a minor is inferred.

## II. STANDARDS OF REVIEW

Summary judgment is appropriate if the pleadings and submissions establish "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS.[8] Whether to grant summary judgment presents a question of law we review *de novo*. *Kelli T-G. v. Charland*, 198 Wis. 2d 123, 128, 542 N.W.2d 175, 177 (Ct. App. 1995).

The interpretation of an insurance policy also presents a question of law we review independently of

---

[8] The trial court dismissed the action without reference to anything outside the pleadings. Whether it did so under § 802.06(2)(f), STATS., or as the first step in summary judgment methodology under § 802.08, STATS., the analysis would be identical and would focus only on the sufficiency of the complaint. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 747, 470 N.W.2d 625, 628-629 (1991). Whether a complaint states a claim presents a question of law we determine without deference to the trial court's decision. *See Williams v. Security Sav. & Loan Ass'n*, 120 Wis. 2d 480, 482, 355 N.W.2d 370, 372 (Ct. App. 1984).

the trial court. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). The interpretation of an insurance policy is governed by the general principles of contract construction. *Kuhn v. Allstate Ins. Co.*, 193 Wis. 2d 50, 60, 532 N.W.2d 124, 128 (1995). "We are to read insurance policies to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract." *Tara N. v. Economy Fire & Casualty Ins. Co.*, 197 Wis. 2d 77, 88, 540 N.W.2d 26, 31 (Ct. App. 1995). Further, "[a]n exclusionary clause in an insurance contract is strictly construed against the insurer. However, an insurance contract must also be interpreted to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean." *Id.* at 90, 540 N.W.2d at 32.

Consistent with these fundamental principles of insurance law, and based on a growing body of persuasive case law addressing issues of homeowner insurance coverage for sexual abuse, we conclude that a reasonable person would understand that if he or she "knew or, in the exercise of reasonable care should have known" of a spouse's sexual abuse of children, a homeowner insurance policy's intentional-acts exclusion will preclude coverage.

## III. ANALYSIS

On appeal, the appellants accept that the intentional-acts exclusions preclude insurance coverage for the grandfather's alleged intentional sexual abuse of the grandchildren. They contend, however, that those same exclusions do not preclude coverage for the alleged actions—and/or inactions—of the grandmother because each policy also includes a "severability"

clause. Thus, the appellants maintain, the conduct of each insured must be viewed separately and, therefore, the exclusion of coverage for the grandfather's intentional acts does not preclude coverage for the grandmother's negligent acts. We conclude, however, that the intentional-acts exclusions also preclude coverage for the grandmother.[9]

### A. Homeowner insurance coverage for sexual abuse—Wisconsin case law

First, it will be helpful to summarize recent Wisconsin case law on homeowner insurance coverage for sexual abuse in order to locate the instant case in this rapidly developing area.

In 1988, reviewing summary judgment in *K.A.G. v. Stanford*, 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), this court concluded "that acts of sexual molestation against a minor are so certain to result in injury to that minor that the law will infer an intent to injure on behalf of the actor without regard to his or her claimed intent." *K.A.G.*, 148 Wis. 2d at 165, 434 N.W.2d at 793. We held, therefore, that a policy's intentional-acts exclusion precluded coverage for the offender. In dicta, we also commented that the trial court's "viable alternative analysis" was "based upon sound legal principles"—that "no reasonable person would expect a

---

[9] Accordingly, we need not consider a number of additional issues that relate, in part, to differences among the policies including: (1) the distinction between "the insured" and "an insured" in the intentional-acts exclusion; (2) the distinction between the policies that included a sexual misconduct exclusion and those that did not; and (3) the distinction between two different sexual misconduct exclusions. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

homeowner's insurance policy to provide coverage for damages resulting from his sexual misconduct, especially when the language in the intentional act exclusion would alert a reasonable person that injury inflicted intentionally is not subject to coverage." *Id.*, 148 Wis. 2d at 165-166, 434 N.W.2d at 793.

In 1989, reversing a trial court's denial of a judgment notwithstanding the verdict in *Hagen v. Gulrud*, 151 Wis. 2d 1, 442 N.W.2d 570 (Ct. App. 1989), this court built upon both the holding and dicta of *K.A.G.*, and concluded that where a homeowner policy contained an intentional-acts exclusion but "did not express an intention as to sexual assault coverage, we look to the reasonable expectations of" the parties. We concluded "that a person purchasing homeowner's insurance would not expect that he or she was insuring his or her children against liability for their sexual assaults" and, accordingly, we held that the offender's mother's policy provided no coverage. *Id.*, 151 Wis. 2d at 7, 442 N.W.2d at 573.

In 1990, reviewing summary judgment in *N.N. v. Moraine Mutual Insurance Co.*, 153 Wis. 2d 84, 450 N.W.2d 445 (1990), the supreme court, building further on *K.A.G.*, concluded that despite an offender's claim of intoxication and non-intent, his guilty plea to criminal sexual assault of a young child established intent for purposes of the intended-acts exclusion and, therefore, his homeowner policy provided him with no coverage for his victim's injuries. *Id.*, 153 Wis. 2d at 93-97, 450 N.W.2d at 449-450.

In 1991, reviewing a judgment following a jury trial in *Loveridge v. Chartier*, 161 Wis. 2d 150, 468 N.W.2d 146 (1991), the supreme court distinguished *K.A.G.* and *N.N.*, and concluded that intent to injure could not be inferred as a matter of law in the case of a

forty-four-year-old man who had not been convicted of sexual assault, but who had been sued by a young woman as a result of injuries she suffered through the transmission of the herpes simplex virus when, at age sixteen or seventeen, she had maintained a consensual sexual relationship with him. The court held, therefore, that the intentional-acts exclusion did not preclude homeowner coverage. *Id.*, 161 Wis. 2d at 169-176, 468 N.W.2d at 151-154.

In 1993, reviewing summary judgment in *Taryn E.F. v. Joshua M.C.*, 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993), this court concluded that a homeowner policy's sexual misconduct exclusion referring to "any insured" precluded coverage for the parents of an offender, despite the fact that the parents were "innocent insureds," and despite the fact that the policy also included a severability clause. *Id.*, 178 Wis. 2d at 723-727, 505 N.W.2d at 420-422.

In 1995, reviewing summary judgment in *Tara N.*, this court concluded that a homeowner policy containing both an intentional-acts exclusion and a sexual misconduct exclusion precluded coverage for the parents of an offender who sexually abused his daughter during what was supposed to be supervised visitation in their home. The victim had sued her grandparents claiming they were negligent in carrying out court-ordered supervision. We held, *inter alia*, that "[a]n exclusion provision which excludes the act of the wrongdoer also operates to exclude coverage for the parents' alleged negligent supervision or control of the wrongdoer." *Id.*, 197 Wis. 2d at 89, 540 N.W.2d at 31.

We now take what we believe to be the next logical step along this legal trail. Simply stated, despite a severability clause, and regardless of whether a policy

includes a sexual misconduct exclusion, the intentional-acts exclusion precludes homeowner insurance coverage for one who knew or should have known of sexual abuse committed by one's spouse.

## B. The intentional-acts exclusion

Construing a policy exclusion for bodily injury or property damage "which is expected or intended by the insured," this court, in *K.A.G.*, explained:

> In *Pachuki v. Republic Ins. Co.*, 89 Wis. 2d 703, 278 N.W.2d 898 (1979), the supreme court concluded that an intentional act exclusion precluded coverage as long as the insured actor intended some harm or injury, even though he did not intend the injury actually incurred. In discussing the intent that must be proven to invoke the exclusion, the court cited W. Prosser, Handbook on the Law of Torts sec. 8, at 31-32 (4th ed. 1971):
>
> > Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does. . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he intended it.

While the court did not elaborate on this illustration, the included section suggests the court's implicit recognition that where an actor's conduct is substantially certain to result in injury, the existence of such an intention may be inferred as a matter of law without regard to the actor's claimed intent.

Therefore, for purposes of the intentional act exclusion, intent to injure may be inferred where injury is substantially certain to result from an insured's intentional conduct.

*K.A.G.*, 148 Wis. 2d at 162-163, 434 N.W.2d at 792 (citation and footnote omitted; ellipses and parenthetical in *K.A.G.*).

This court then went on to "conclude that sexual molestation of a minor falls within this category" of "intentional conduct . . . substantially likely to cause injury so as to warrant an inference of an intent to injure." *Id.*, 148 Wis. 2d at 434 N.W.2d at 793. In the instant case, less obviously but just as certainly, the intentional-acts exclusion also defeats coverage for the grandmother's alleged conduct.

The complaint alleges that the grandmother "knew or, in the exercise of reasonable care, should have known" of the grandfather's sexual abuse of their four grandchildren. We, like the trial court, "must assume that the facts pleaded are true." *Stefanovich v. Iowa Nat'l Mut. Ins. Co.*, 86 Wis. 2d 161, 164, 271 N.W.2d 867, 869 (1978). Unquestionably, therefore, as a matter of law under *K.A.G.*, if the grandmother "knew" of her husband's actions, she "expected or intended" the harm to her grandchildren.[10]

---

[10] Increasingly, criminal law also has recognized this realm of responsibility. In Wisconsin, § 948.02(3), Stats., provides:

"A claim should not be dismissed," however, "unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664 (1979). Therefore, we must also consider whether the policies provide coverage if the grandmother allegedly did *not* know but, "in the exercise of reasonable care, should have known." While this presents a more subtle issue, we conclude that, in the context of child sexual abuse allegedly committed by one's spouse under circumstances in which the spouse "in the exercise of reasonable care, should have known," the intentional-acts exclusion precludes coverage.

In *Hagen*, this court extended the analysis of *K.A.G.* to circumstances in which a sexual assault victim sued not only her assailant, but also her assailant's mother's homeowner insurer. *Hagen*, 151 Wis. 2d at 3, 442 N.W.2d at 571. The dispositive issue in *Hagen* was "whether insurance policy coverage for injuries arising out of a nonconsensual sexual assault were [sic] within the reasonable expectations of the contracting parties." *Id.* In reversing the trial court's denial of the insurer's motion for judgment notwithstanding the verdict, *Hagen* reiterated that "[w]e should construe an insur-

FAILURE TO ACT. A person responsible for the welfare of a child who has not attained the age of 16 years is guilty of a Class C felony if that person has knowledge that another person intends to have, is having or has had sexual intercourse or sexual contact with the child, is physically and emotionally capable of taking action which will prevent the intercourse or contact from taking place or being repeated, fails to take that action and the failure to act exposes the child to an unreasonable risk that intercourse or contact may occur between the child and the other person or facilitates the intercourse or contact that does occur between the child and the other person.

ance policy as a reasonable person in the position of the insured would understand it," *id.*, and explained:

> In *K.A.G. v. Stanford*, we decided a case similar to this one, but on a different theory. We noted that the trial court had dismissed the insurers in that case "because no reasonable person would expect a homeowner's insurance policy to provide coverage for damages resulting from [the defendant's] sexual misconduct. . . ." We suggested that this alternative analysis . . . may be as persuasive as the one used in *K.A.G.*

*Id.*, 151 Wis. 2d at 5, 442 N.W.2d at 572 (citations omitted; bracket and ellipses in *Hagen*).

Citing several cases from other jurisdictions that had reached similar results, *Hagen* then went on to conclude "that a person purchasing homeowner's insurance would not expect that he or she was insuring his or her children against liability for their sexual assaults." *Id.*, 151 Wis. 2d at 7, 442 N.W.2d at 573. We emphasized that both the insurer and the assailant's mother "would cringe at the very suggestion that they were buying and selling sexual assault insurance" and, accordingly, "there is no coverage in this case as a matter of law." *Id.*

*Hagen* quoted with approval *Rodriguez v. Williams*, 713 P.2d 135 (Ct. App.), *aff'd*, 729 P.2d 627 (Wash. 1986), and *Altena v. United Fire and Casualty Co.*, 422 N.W.2d 485 (Iowa 1988), not only for the proposition that " '[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage' " (for claims arising out of nonconsensual sex acts), but also for the proposition that " 'certainly [the person] would not want to share that type of risk with other homeowner's policyholders.' " *Hagen*, 151 Wis. 2d

at 6-7, 442 N.W.2d at 573 (citation omitted; brackets in *Hagen*). Similarly, an Illinois court recently commented that even though it "need not consider the . . . arguments . . . that coverage for sexual abuse is against public policy and that neither party to the contract contemplated coverage for . . . sexual misconduct, . . . [i]t is beyond the realm of the imagination that [the assailant's] mother purchased her homeowner's insurance policy with [her son's] sexual misconduct in mind." *State Farm Fire & Casualty Co. v. Watters*, 644 N.E.2d 492, 499 (Ill. App. Ct. 1994).[11]

Thus, this case law identified two separate but related principles of a policy-holder's reasonable expectations, regardless of the policy-holder's knowledge of the sexual abuse: (1) that one who purchases homeowner insurance does not contemplate coverage for sexual misconduct committed by one's child; and (2) that one who purchases homeowner insurance would not want to share that type of risk, (and the increased premiums that would result,) with other homeowner's policyholders. *Hagen*, 151 Wis. 2d at 6-7, 442 N.W.2d at 573. These considerations apply with at least equal force to a policy-holder's expectations with respect to sexual assaults committed by his or her spouse.

---

[11] *State Farm Fire & Casualty Co. v. Watters*, 644 N.E.2d 492 (Ill. App. Ct. 1994) also assists our consideration of an issue only affecting this appeal with respect to State Farm: whether Wisconsin or Illinois law applies. We need not determine which state's law governs because, consistent with *State Farm Fire*, we are satisfied that the outcome would be the same under either. *See also Western States Insurance Co. v. Bobo Insurance Co.*, 644 N.E.2d 486 (Ill. App. Ct. 1994).

## C. Severability

The appellants offer strong arguments based on the "severability of interest" clause of each policy and *Northwestern National Insurance Co. v. Nemetz*, 135 Wis. 2d 245, 400 N.W.2d 33 (Ct. App. 1986) (despite intentional-acts exclusion, severability clause of homeowner's policy preserved coverage for wife where husband committed arson of their tavern and neighbors' adjoining property). We conclude, however, that *Nemetz* is distinguishable.

*Nemetz* dealt with arson and, therefore, did not encounter the special considerations that arise in the context of child sexual abuse, particularly within a family.[12] Moreover, *Nemetz* considered whether an apparently *innocent* spouse retains separate coverage.[13] Here, by contrast, the grandmother allegedly

---

[12] *See Prosser v. Leuck*, 196 Wis. 2d 780, 539 N.W.2d 466 (Ct. App. 1995), where this court considered whether principles of fortuity or an intentional acts exclusion precluded homeowner insurance coverage for the father of a teenager who caused a warehouse fire. Distinguishing *K.A.G.* and *Hagen*, we commented that the "act of playing with fire is far removed from the intentional acts of sexual assault and murder." *Id.*, 196 Wis. 2d at 786, 539 N.W.2d at 468; *see also Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 488, 326 N.W.2d 727, 740 (1982) ("An absolute bar to recovery by an innocent insured is particularly harsh in a case in which the arson appears to be retribution against the innocent insured.").

[13] The court noted that "[a]lthough some of Hazel's actions may have supported a conspiracy finding if the hired arsonist had burned the building as Walter originally planned, this scheme was clearly abandoned. . . . [T]here was no credible evidence to support Hazel's involvement in a conspiracy to set the actual . . . fire." *Northwestern Nat. Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 258, 400 N.W.2d 33, 39 (Ct. App. 1986). The court also concluded that the insurers had "waived their right to

knew or should have known. Therefore, according to the pleadings, she was not "innocent." Indeed, *Nemetz* reiterates the "premise that public policy considerations should prevent recovery by an insured who is not innocent with respect to intentional damages." *See id.*, 135 Wis. 2d at 258, 400 N.W.2d at 38. A grandmother who, according to the complaint, knew or should have known of her husband's sexual abuse of their four grandchildren "for several years" certainly "is not innocent with respect to [the] intentional damages" resulting from sexual abuse.[14]

argue that Hazel was not an innocent insured." *Id.*, 135 Wis. 2d at 258, 400 N.W.2d at 38-39.

[14] The appellants also attempt to support their severability arguments with numerous cases from other jurisdictions. We briefly comment on some in order to identify several important distinctions.

In *American States Insurance Co. v. Borbor*, 826 F.2d 888 (9th Cir. 1987), a case involving sexual abuse of children in a nursery school, the court considered a partnership's comprehensive liability policy and "whether a partner who is liable for the wilful acts of a co-partner may be insured against that liability." *Id.*, 826 F.2d at 892. In the instant case, by contrast, we are dealing with homeowner insurance, not a comprehensive liability policy; with a home, not a nursery school; and with spouses who are not in a business partnership.

Moreover, although *Borbor* is not entirely clear on this point, it seems to imply that a spouse who " 'more likely' . . . closed her eyes to certain facts to deliberately avoid learning the whole truth," and who "was negligent in her failure to supervise [her husband who was a pedophile who abused numerous children and took over 2000 photographs of them], or in her failure to undertake an investigation to find out what was going on," was "innocent." *Id.* at 892. We strongly disagree.

The appellants also rely on *National Union Fire Insurance Co. v. Lynette C.*, 279 Cal. Rptr. 394 (Ct. App. 1991), where the

## IV. CONCLUSION

Accordingly, in this case, we conclude that despite severability clauses and regardless of sexual misconduct exclusions, the intentional-acts exclusions precluded homeowner insurance coverage for the grandmother who allegedly knew or should have known of her husband's alleged sexual abuse of their grandchildren. The trial court correctly granted summary judgment for the homeowner insurers.

*By the Court.*—Order affirmed and cause remanded.

SCHUDSON, J. (*concurring*). I further acknowledge that the parties have vigorously argued public policy. Although the panel disagrees over whether it is necessary to address these arguments, I believe it

court concluded that a woman was covered by her homeowner policy for her husband's sexual abuse of their foster children. The case is clearly distinguishable. It was resolved not on the basis of an intentional-acts exclusion, but rather, under the policy's sexual misconduct exclusion. The exclusion referred to both "the" insured and "an" insured in a manner leading the court to conclude that the exclusion "can reasonably be read to protect one insured against claims based on a second insured's sexual conduct so long as the first insured has not engaged directly in that conduct." *Id.*, 279 Cal. Rptr. at 396-397.

Finally, the appellants' reliance on *United States Fidelity & Guaranty Co. v. Open Sesame Child Care Center*, 819 F.Supp. 756 (N.D.Ill. 1993), also is misplaced. The case considered a multi-peril policy's coverage of an employer for the alleged negligent hiring of a staff member who molested a child in a daycare center. In the instant case, we address neither such a policy, nor an employer-employee relationship, nor a claim of negligent hiring, nor a child care business setting.

appropriate to do so because the case law guiding our resolution of this appeal is based, in part, on related public policy considerations. Moreover, although at summary judgment courts rarely resolve cases on the basis of public policy, sometimes they deem it appropriate to do so, particularly where insurance coverage is at issue. As this court recently explained in a child sexual abuse case involving a woman's potential liability (and her homeowner insurance coverage) for her alleged negligence in failing to warn of her ex-husband's dangerousness:

> "The application of public policy considerations is solely a function of the court, and does not in all cases require a full factual resolution of the cause of action by trial before policy factors will be applied by the court."

*Kelli T-G. v. Charland*, 198 Wis. 2d 123, 129, 542 N.W.2d 175, 177 (Ct. App. 1995) (quoting *Hass v. Chicago & N.W. Ry.*, 48 Wis. 2d 321, 326–327, 179 N.W.2d 885, 888 (1970)).

The appellants express understandable concern for the opportunity of sexually-abused children to gain compensation for their injuries. They also express alarm over the possibility that the person they term an "innocent" grandmother ultimately may be held financially accountable for her husband's actions. The respondents counter not only with case law demarcating the lines of a policyholder's reasonable expectations, but also with public policy arguments intimating that our decision's impact on sexually-abused children may not be as the appellants suppose. Indeed, the respondents implicitly contend, denying coverage under the circumstances of this case may be more likely to aid children than granting coverage.

In all likelihood, relatively few homeowners actually contemplate the precise parameters of their coverage. Notwithstanding the case law's conclusions about what reasonable policyholders expect, relatively few homeowners consider whether their insurance covers sexual misconduct. A parent or grandparent confronting the horror of sexual abuse by his or her spouse, or denying knowledge even though he or she should have known, or deciding whether to intervene, rarely would resolve these excruciatingly painful problems on the basis of anticipated insurance coverage.

Still, to acknowledge the remoteness of the possibility that one's decision to confront sexual abuse by one's spouse would ever be *determined* by insurance coverage is not to say that the decision would never be *influenced* by such considerations. While improbable in most cases, such a factor is not impossible in all. Therefore, at least in some cases, homeowner's coverage for the so-called "non-offending" spouse would militate against that spouse intervening to prevent abuse.

Thus, it is noteworthy that in assessing the reasonable expectations of "a person purchasing homeowner's insurance," *Hagen* declared "that this person would not want to remove *any deterrence that the threat of a money judgment provides*." *Hagen*, 151 Wis. 2d at 7, 442 N.W.2d at 573 (emphasis added). Moreover, what now may seem a remote possibility could become far less remote should courts ever conclude that the so-called "non-offending" spouse could receive homeowner insurance coverage for the offender's abuse. Not only would prevention, intervention, and deterrence of sexual abuse decline, but collusion could increase as sexually-abusive families

discovered they could not only assault children, but gain insurance recoveries as well.

Recently, an Illinois court considering an intentional-acts exclusion came to the intersection of several of the insurance law principles and public policy arguments present in this appeal. Although addressing a case in which coverage for the offender, not the offender's spouse, was at issue, the court's words are instructive:

> [The children] raise the argument that denial of coverage will result in innocent victims going uncompensated. Courts ... "have determined that [the] benefit [of compensating sexual abuse victims with insurance proceeds] is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offense [s]." Furthermore, economic liability should be placed with the same precision as moral liability is placed—squarely on the shoulders of the abuser. "Any other result subsidizes the episodes of child sexual abuse ... at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed."

*Western States Ins. Co. v. Bobo Ins. Co.*, 644 N.E.2d 486, 491–492 (Ill. App. Ct. 1994) (first brackets and ellipses added; second and third brackets added; second ellipses in *Bobo*); *see also N.N.*, 153 Wis. 2d at 95, 450 N.W.2d at 449 (1990) (This benefit of making possible another potential source of compensation for victims' injuries " 'is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses.' ") (quoting

*Whitt v. DeLeu*, 707 F. Supp. 1011, 1016 (W.D. Wis. 1989)).

Thus, I also conclude that although in most cases any impact is remote, in some situations the unavailability of coverage will prevent abuse and, where abuse has occurred, will motivate the "non-offending" spouse to intervene on behalf of the victims.

WEDEMEYER, P.J. (*concurring*). I join in Judge Schudson's analysis and conclusion that the intentional-acts exclusion precludes coverage in this case. Accordingly, I agree that this case should be affirmed. I write separately, however, because I do not join in Judge Schudson's public policy analysis provided in his separate concurring opinion. Because this case can be disposed of under the terms of the insurance policy at issue, it is unnecessary to address public policy. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); and *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the narrowest possible grounds).