5 Cal.App.4th 1470 (1992)
7 Cal. Rptr.2d 694
THEODORE H. SMYTH, Plaintiff and Appellant,
v.
USAA PROPERTY AND CASUALTY INSURANCE COMPANY et al., Defendants and Respondents.
Docket No. B057788.
Court of Appeals of California, Second District, Division Six.
April 30, 1992.
*1472 COUNSEL
Mullen & Henzell, Charles S. Bargiel, Joel C. Baiocchi and Matthew J. Long for Plaintiff and Appellant.
Henderson & Angle and Robert O. Angle for Defendants and Respondents.
OPINION
STONE (S.J.), P.J.
In this insurance coverage dispute, Theodore H. Smyth (Smyth) appeals from the order of the trial court dismissing his action *1473 against respondents, USAA Property and Casualty Insurance Company and United Services Automobile Association (collectively, USAA), after the court sustained demurrers to his amended complaints without leave to amend. (See Code Civ. Proc., § 581d  written, signed and filed order of dismissal is appealable; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 75, p. 99.)
Smyth contends that his homeowners insurer, USAA, had a duty to defend him against a suit for damages for personal injuries and deaths suffered in a massive fire in a hotel in San Juan, Puerto Rico (the Fire Suit). Smyth was named in the Fire Suit in his capacity as an outside director of the corporation which owned the hotel.
He asserts the terms of his policies are ambiguous regarding whether his service as a director of the corporation is covered, raising questions of fact which may not be resolved on demurrer.
He also contends that the statutes of limitations do not bar his causes of action for bad faith and negligent misrepresentation, and that USAA is estopped to assert the limitations statutes. We affirm the dismissal of his suit.
(1) In reviewing the sufficiency of a complaint against a demurrer, we deem true all material and properly pleaded facts; however we may not consider opinions, contentions, deductions or conclusions of fact or law alleged. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal. Rptr. 718, 703 P.2d 58]; Casella v. City of Morgan Hill (1991) 230 Cal. App.3d 43, 48 [280 Cal. Rptr. 876].)
Smyth's amended complaints alleged, inter alia, that USAA breached its insurance contracts with him and wrongly forced him to defend and settle claims raised against him in the Fire Suit by falsely stating he had no insurance policies in effect.
Smyth pled and incorporated by reference two primary and one excess umbrella insurance policies he asserts afford him coverage. One of the primary policies covers his personal residence in Santa Barbara, the other covers vacation property in Palm Desert. The umbrella policy refers to his Santa Barbara residence.
Smyth alleges that these policies afford him coverage because his service as a director did not constitute a trade, profession or occupation, but rather was an activity which is usual as a nonbusiness pursuit.
Upon review, we accept as true his specific factual allegations that: 1) he sat on the board as a favor to an old friend, 2) he received no compensation *1474 for his participation on the board, 3) his involvement as a director was not a continuous or regular activity for the purpose of earning a profit or livelihood, 4) he did not engage in this activity for part-time or supplemental income, 5) he was not motivated to become a director of the corporation because of profit or gain from that activity, 6) he did not and does not sit on any other boards, and 7) his involvement as an outside director was minimal.
(2a) He claims that his status and these activities fall outside the exclusions stated in the policies for "business pursuits" because he was not motivated by profit in becoming a director of the hotel.
(3) "`The interpretation of an insurance policy, like any other contract, is a matter of law as to which a reviewing court must make its own independent determination.' [Citation.]" (NN Investors Life Ins. Co. v. Superior Court (1989) 208 Cal. App.3d 1070, 1072 [256 Cal. Rptr. 598].) (4) "Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer. [Citation.] However, strict construction does not mean strained construction; under the guise of strict construction, we may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]" (National Union Fire Ins. Co. v. Lynette C. (1991) 228 Cal. App.3d 1073, 1077 [279 Cal. Rptr. 394].) (5) An insurer's duty to defend arises only where there is potential coverage under the policy. (Marglen Industries, Inc. v. Aetna Casualty & Surety Co. (1992) 4 Cal. App.4th 414, 422 [5 Cal. Rptr.2d 659].) The determination of whether an insured's expectation of coverage is reasonable is a question of law. (Dyer v. Northbrook Property & Casualty Ins. Co. (1989) 210 Cal. App.3d 1540, 1549 [259 Cal. Rptr. 298]; Marglen, supra, at p. 422.)
(6) "In analyzing a policy for uncertainties, the language used must be read in its ordinary sense, according it the meaning which would ordinarily be attached to it by a layman." (NN Investors Life Ins. Co. v. Superior Court, supra, 208 Cal. App.3d at p. 1072.) "Any doubts, uncertainties, or ambiguities in policy language must be resolved in favor of the insured. However, this principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law." (Ibid.) "Finally, the policy is construed as a whole, each clause helping to interpret the other. [Citation.]" (National Union Fire Ins. Co. v. Lynette C., supra, 228 Cal. App.3d at p. 1078.)
(2b) Smyth incorrectly alleges that the exclusion of coverage for directors in the umbrella policy is ambiguous. It states, "we do not insure liability arising from: ... a covered person's activities as an officer or director of *1475 any organization; this does not apply to religious, charitable or civic nonprofit organizations." There is no allegation that the corporation, or the San Juan hotel, is a religious, charitable or civic nonprofit organization. The complaint in the Fire Suit, of which the trial court took judicial notice, alleges that the hotel is a large, international resort hotel and convention center.
It is also of no consequence that there is no exclusion for directors stated in the primary policies because all the policies exclude business activities. The business activities exclusions are clear and preclude coverage of Smyth for this occurrence as a matter of law.
The exclusion regarding business activities in the umbrella policy states, "we do not insure liability arising from: ... a business activity or property on which a business is conducted." "Business" is defined in that policy to include "trade, occupation, profession or business." We find as a matter of law that a hotel involves a trade or business and is a property on which trade and business are conducted.
The primary policies exclude coverage for liability "arising out of business pursuits of an insured...." The policies then state that "[t]his exclusion does not apply to: [¶] (1) activities which are usual to non-business pursuits. ..." (Italics added.) "Business" is defined in the primary policies to include "trade, profession or occupation." That this definition is not identical in the primary and excess policies does not create an ambiguity. Again, the language is clear.
The critical question raised is whether or not an insured has any possible reasonable expectation of coverage under these homeowners policies for engaging in activities of a directorship of a corporation owning a large resort hotel. The answer is no. Such activities cannot be considered "usual to non-business pursuits."
In sum, no person could reasonably believe that these homeowners policies provide coverage or require any duty to defend Smyth from any acts or omissions in his capacity as a director of a corporation which owns a large resort hotel. (Fire Ins. Exchange v. Jiminez (1986) 184 Cal. App.3d 437, 441 [229 Cal. Rptr. 83]; West American Ins. Co. v. California Mutual Ins. Co. (1987) 195 Cal. App.3d 314, 323 [240 Cal. Rptr. 540].)
Smyth's reliance on language in State Farm Fire & Casualty Co. v. Drasin (1984) 152 Cal. App.3d 864 [199 Cal. Rptr. 749], is misplaced. The Drasin court states that trade, under a standard business pursuits exclusion, is *1476 defined as business being "carried on for the purpose of profit or gain or livelihood." (Id., at pp. 869-870, citing City of Los Angeles v. Rancho Homes, Inc. (1953) 40 Cal.2d 764, 767 [256 P.2d 305].) The Drasin court concluded that the gist of the exception concerns "regular activity with the motivation for profit or gain." (Drasin, supra, at p. 870.) Smyth argues that because his personal motivation was altruistic, USAA must defend. We disagree. Regardless how benevolent Smyth's own motivations were or how minimal his involvement, the activity involved is a business activity subject to exclusion under these policies.

Statutes of limitations
Smyth contends that the trial court improperly sustained demurrers without leave to amend to the causes of action for breach of the duty of good faith and fair dealing and for negligent misrepresentation and concealment stated in his second amended complaint. The court ruled that these causes of action are barred by the statute of limitations. He also asserts that USAA is estopped to assert a limitations defense.

Bad faith cause of action
(7) Smyth asserts that because an action for breach of the implied covenant of good faith and fair dealing is a hybrid action sounding both in tort and contract, he may elect to proceed under a contract theory and thereby be subject to the four-year statute of limitations set forth in Code of Civil Procedure section 337, subdivision 1. (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654 [328 P.2d 198]; Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 573 [108 Cal. Rptr. 480, 510 P.2d 1032]; Frazier v. Metropolitan Life Ins. Co. (1985) 169 Cal. App.3d 90 [214 Cal. Rptr. 883].)
Where both the pleadings and the theory relied upon on appeal sound in contract and in tort, the plaintiff ordinarily may elect the theory of the case. (Frazier v. Metropolitan Life Ins. Co., supra, 169 Cal. App.3d at p. 101.)
Courts consider "the nature of the right sued upon, not the form of action or the relief demanded" to determine the applicable statute of limitations. (Jefferson v. J.E. French Co. (1960) 54 Cal.2d 717, 718 [7 Cal. Rptr. 899, 355 P.2d 643], quoted in Richardson v. Allstate Ins. Co. (1981) 117 Cal. App.3d 8, 12 [172 Cal. Rptr. 423].)
Whether the cause sounds in tort or in contract, therefore, depends upon the facts of the particular case. (Eisenberg v. Insurance Co. of North America (9th Cir.1987) 815 F.2d 1285, 1292.)
*1477 Where, as here, Smyth alleged and has maintained on appeal that USAA sought to shield itself from liability by denying that the contract exists, the action sounds in tort. (Seaman's Direct Buying Service, Inc. v. Standard Oil Co. (1984) 36 Cal.3d 752, 769 [206 Cal. Rptr. 354, 686 P.2d 1158]; cf. Frazier v. Metropolitan Life Ins. Co., supra, 169 Cal. App.3d at pp. 98, 101, in which the trial court regarded the hybrid action as sounding in contract for limitations purposes and where plaintiff's theory on appeal "is entirely based upon a contract cause of action;" and see Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 684, 687 [254 Cal. Rptr. 211, 765 P.2d 373], limiting such tort actions to ones involving a "special relationship" such as insurance contracts.)
Smyth's second amended complaint alleges, in pertinent part, that "[i]n early 1987, plaintiff made an investigation of his files ... for the purpose of discovering any insurance policies that he had which might afford him coverage for liabilities arising out of the Fire Case.... [P]laintiff discovered an old copy of defendants' excess insurance policy no. 219 54 38 70U. When plaintiff subsequently telephoned defendants' offices in or about February 1987, he falsely was informed by defendants' personnel that the policy was not current and that there was no other current policy in effect.
"On or about March 20, 1987, plaintiff again telephoned defendants' offices to inquire whether plaintiff had current policies in effect. Defendants again falsely represented that plaintiff had no current policies in effect."
On appeal, Smyth emphasizes that "the complaint alleges that defendants denied the very existence of a current contract of insurance on more than one occasion."
Although the actual filing date for this action was January 10, 1990, the parties stipulated that the action be deemed filed on November 10, 1989, for purposes of determining whether the statutes of limitations apply. Therefore, the complaint alleges that USAA denied the existence of these policies as of February or March 1987, approximately two years and seven months before he filed the complaint. The trial court properly sustained the demurrer to the bad faith cause because the complaint was deemed filed well over the two-year statute of limitations for such torts set forth in Code of Civil Procedure section 339, subdivision 1.

Negligent misrepresentation
The facts sued upon in the cause for "Negligent Misrepresentation" are the same. Smyth alleged that USAA repeatedly denied the existence of current policies without exercising reasonable diligence to ascertain the truth of this *1478 assertion. The essence of such allegations is that USAA tortiously invaded his property right to be secure from the risk of financial loss. Under the facts alleged, the applicable statute of limitations is, again, two years. (See Richardson v. Allstate Ins. Co., supra, 117 Cal. App.3d at p. 13.)

Estoppel to assert statute of limitations
(8) Smyth argues that USAA is estopped to raise the statute of limitations as a defense. One of the elements of estoppel is prejudicial reliance on the other party's conduct. (Muraoka v. Budget Rent-A-Car, Inc. (1984) 160 Cal. App.3d 107, 116 [206 Cal. Rptr. 476].) Here, Smyth had to allege facts showing he reasonably relied on USAA's statements or conduct so that he would not timely sue.
Unlike the Muraoka case, Smyth alleged that USAA repeatedly denied the existence of current policies.
Smyth alleged, inter alia, that he "was entitled to rely without further inquiry and did reasonably rely upon such representations." He alleges that these misrepresentations and suppressions of material fact "induced plaintiff from bringing this action until plaintiff became aware of the true facts and plaintiff relied upon defendants' misrepresentations to his prejudice."
The facts alleged do not show reasonable reliance. Because the allegations state that USAA repeatedly told Smyth he had no current policies in effect, USAA may not be said to have lulled Smyth into waiting to sue. (Cf. Muraoka v. Budget Rent-A-Car, Inc., supra, 160 Cal. App.3d at p. 116.) USAA did not induce Smyth into believing that they might provide a defense to the Fire Suit.
"`The obligation to defend is predicated upon liability for a loss covered by the policy.' [Citation.]" (State Farm Fire & Casualty Co. v. Drasin, supra, 152 Cal. App.3d at p. 868, italics in text.) Because there is no conceivable theory which would raise an issue bringing Smyth's directorship activities within the ambit of these homeowners policies, USAA had no duty to defend him in the Fire Suit. (Id., at p. 869; Coe v. Farmers New World Life Ins. Co. (1989) 209 Cal. App.3d 600, 608 [257 Cal. Rptr. 411]; Marglen Industries, Inc. v. Aetna Casualty & Surety Co., supra, 4 Cal. App.4th at p. 422 [determination there is no contractual basis for liability under the policy is fatal to bad faith theories].)
*1479 The judgment is affirmed. Costs to USAA.
Gilbert, J., and Yegan, J., concurred.