**Colleen C. BADELL, Plaintiff,**

v.

**CELTIC LIFE INSURANCE COMPANY, et al.,**
**Defendants.**

**No. C 00–4431 CRB.**

United States District Court,
N.D. California.

March 30, 2001.

Roxanne Davis Jones, Law Offices of Roxanne Davis Jones, Santa Rosa, CA, for Plaintiff.

Paul W. Windust, Fleming & Phillips, Robert D. Phillips, Jr., Fleming & Phillips, Walnut Creek, CA, for Defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

In this breach of contract/bad faith lawsuit plaintiff contends that defendants breached plaintiff's health insurance contract by, among other things, failing to pay for cosmetic surgery to correct the effects of an earlier illness. Defendants now move for summary judgment. After carefully considering the papers submitted by the parties, and having had the benefit of oral argument, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

In June 1991 plaintiff was diagnosed with nephritis, a kidney condition which results in body swelling and weight gain from fluid retention. Plaintiff gained approximately 50 pounds as a result of the condition. She received medical treatment, including chemotherapy and home nursing care, until the Spring of 1992. She eventually lost all of the weight she had gained, but was left with excessive skin laxity and bulging consistent with fat deposits. She also suffered tissue damage, which caused a dramatic change in her anatomical shape so that she could no longer wear her normal clothing. She suffered extreme embarrassment because of the condition of her legs/thighs and wore long pants and skirts to conceal her disfigurement.

### The cosmetic surgery

Plaintiff's physicians were concerned that she might have a recurrence of the disease. Accordingly, for the next few years she utilized "conservative" methods in an effort to regain her pre-disease shape and body contour. When her condition did not improve, and she felt surgery would not be a risk to her health, she consulted with a plastic surgeon, Dr. Maxwell. Dr. Maxwell performed an inner thigh lift and ultrasound assisted liposuction on her in August 1996. Plaintiff prepaid for the procedure and did not seek pre-certification from defendant Celtic Life Insurance Company ("Celtic"), her health insurer.

In April 1997, plaintiff submitted a claim to Celtic for payment of the anesthesiology fees related to the surgery. Celtic promptly denied the claim on the ground that her health insurance policy only covered cosmetic surgery to "correct a bodily injury or sickness." On May 1, 1997, plaintiff appealed the denial of her claim.

Two weeks later, on May 14, 1997, Celtic upheld the initial claim denial on the grounds that the surgery was not performed (1) to correct a bodily injury or sickness, and (2) she did not seek pre-certification of the surgery.

Plaintiff subsequently filed a complaint with the California Department of Insurance on May 29, 1997. Her complaint explained that she had had trouble obtaining her receipts from her plastic surgeon who had gone on indefinite medical leave, but that she expected Celtic to shortly deny her claim for the surgeon's fee as it had done with the anesthesiology fee. In response to her Department of Insurance complaint, Celtic wrote plaintiff on August 11, 1997 with a further explanation of its denial and requested that plaintiff provide it with her medical records. She responded to Celtic's letter and advised that her physicians at Stanford (who treated her nephritis) and with whom she discussed her cosmetic surgery would confirm the damage to plaintiff's skin laxity and tissue movement. She also advised that she has photographs taken before and after her illness which demonstrate the damage caused by her illness.

On October 10, 1997, after receipt of plaintiff's medical records, Celtic forwarded plaintiff's appeal for an outside, independent medical review. On October 30, 1997, Celtic sent plaintiff a letter explaining that the outside medical review found that her surgery was not covered by her policy.

### Other miscellaneous claims

On October 22, 1997, plaintiff appealed the denial of claims for physical therapy and acupuncture services. By letter dated Nov. 13, 1997, Celtic agreed to pay for the physical therapy, but with respect to the remaining items it stated that she had not indicated precisely what benefit issues relate to those items. Celtic said it would be happy to review those claims if plaintiff provided the relevant details. Plaintiff responded with further details by letter dated December 4, 1997.

On January 17, 1998, plaintiff wrote Celtic regarding her claim for acupuncture services. She then filed a complaint with the California Department of Insurance about payment for those services. Celtic responded to her by letter dated May 18, 1998. Plaintiff promptly responded with a letter of her own, dated June 2, 1998.

### The request for a lower body lift pre-certification

On April 9, 1999, plaintiff faxed and mailed a letter to Celtic requesting pre-authorization for a surgeon in Kansas to perform a lower body lift to correct the physical damage caused by her nephritis. She had received notice that her Celtic policy was due to expire on May 1, 1999 due to Celtic's withdrawal from the California market. Celtic's administrator received the mail copy on April 17, 1999. On May 3, 1999, Celtic's administrator denied the pre-authorization request on the ground that the policy expired on May 1, 1999.

### The lawyers get involved

On August 30, 1999, plaintiff's attorney sent a demand letter to Celtic regarding all of plaintiff's claims. Celtic responded that plaintiff had completed all of her administrative procedures regarding the Dr. Maxwell surgery as of October 30, 1997. In an October 21, 1999 telephone conversation between Celtic and plaintiff's attorney, Celtic suggested that plaintiff submit a statement of medical necessity from her physician. Plaintiff did so on January 13, 2000. Celtic forwarded the new information, along with the old, for an outside independent medical review. By letter dated March 13, 2000, Celtic again denied

the claim for the surgery performed by Dr. Maxwell.

### The present lawsuit

Plaintiff filed this lawsuit in April 2000 in state court. She makes claims for breach of contract, breach of the implied covenant, negligence, and emotional distress against Celtic and its plan administrator, Healthplan Services ("Healthplan"). Defendants removed the case to this Court in December 2000 after plaintiff's response to interrogatories revealed that the amount in controversy requirement was satisfied. Defendants now move for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all reasonable inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997). An inference may be drawn in favor of the non-moving party, however, only if the inference is "rational" or "reasonable" under the governing substantive law. *See Matsushita*, 475 U.S. at 588, 106 S.Ct. 1348.

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. *See id.*

### II. The Claim For Benefits For The August 1996 Surgery

#### A. The breach of contract claim

"'The interpretation of an insurance policy, like any other contract, is a matter of law.'" *Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal.App.4th 1470, 1474, 7 Cal.Rptr.2d 694 (1992) (citation omitted). "Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer." *Id.*

The insurance policy at issue excludes coverage for cosmetic or reconstructive surgery "unless surgery is needed to correct a bodily injury or sickness that occurs while the *insured's persons* coverage is in effect." Celtic contends that plaintiff's claim is not covered pursuant to this provision because the surgery was not performed to correct her sickness, but rather, was performed to correct the

*effects* of her sickness. In the alternative, it also argues that the claim was properly denied because she did not seek pre-certification of the surgery.

Celtic's argument is unpersuasive. Celtic's own Handbook defines cosmetic surgery as "a procedure performed to reshape normal structures of the body in order to improve the patient's appearance and self-esteem." Thus, by definition, cosmetic surgery is surgery to improve a patient's appearance. Accordingly, the exclusion for cosmetic surgery unless the surgery is needed to correct a sickness, or to put it another way, coverage for cosmetic surgery to correct a sickness, must include surgery to correct the effects of a sickness on the patient's appearance, otherwise the coverage for cosmetic surgery to correct a sickness would be meaningless.

Celtic also argues that only cosmetic surgery required to restore bodily function or correct a congenital defect is covered. There is simply nothing in the language of the policy exclusion, however, that requires that the surgery correct some bodily function or a congenital defect As is set forth above, cosmetic surgery is by definition surgery to correct a patient's appearance, not surgery to restore bodily function. Moreover, if coverage was limited to surgery to correct a congenital defect the language "to correct a sickness" would be meaningless since a congenital defect is not a sickness.

In sum, the language of Celtic's policy exclusion is at best ambiguous and thus must be construed against Celtic. *See National Union Fire Ins. Co. v. Lynette C.,* 228 Cal.App.3d 1073, 1077, 279 Cal.Rptr. 394 (1991); *NN Investors Life Ins. Co. v. Superior Court,* 208 Cal.App.3d 1070, 1072, 256 Cal.Rptr. 598 (1989). As there is a genuine dispute of fact as to whether the 1996 surgery was necessary to correct the effects of plaintiff's 1991 sickness, Celtic's

motion for summary judgment of the breach of contract claim must be denied.

██ Celtic also contends that it was not required to pay for plaintiff's August 1996 surgery because she did not obtain "certification" from the insurer prior to the surgery. While plaintiff's policy does require pre-certification for surgery (Policy at 8), it states that "[i]f a insured person decides to receive non-certified medical treatment, there is a *penalty* and reduced benefits are paid." Policy at 10. The penalty is an exclusion from eligible expenses of 20 percent of all related charges. *Id.* Thus the Policy on its face does not give Celtic the right to deny benefits solely on the ground that pre-certification was not obtained.

## B. The bad faith claim

Celtic also moves for summary judgment of the bad faith claim on the grounds that (1) it is barred by the applicable statute of limitations, and (2) in any event, no reasonable jury could find bad faith as a matter of law.

### 1. The statute of limitations

██ The statute of limitations for breach of the implied covenant of good faith and fair dealing is two years. *See Smyth,* 5 Cal.App.4th at 1477, 7 Cal. Rptr.2d 694. In this case the primary issue is when the statute of limitations began to run. Celtic argues that it began to run in April 1997 when Celtic first denied the claim. In the alternative, it argues that it began to run at the latest on October 30, 1997, when it notified plaintiff that the independent medical review board had determined that her surgery was not covered. Plaintiff contends that the October 30, 1997 letter was equivocal and therefore did not start the running of the statute of limitations.

■ In general, a statute of limitations begins to run after the cause of action has accrued. "The cause of action ordinarily *accrues* when, under the substantive law, the wrongful act is done *and the obligation or liability arises*, i.e., when a suit may be brought." Witkin, *California Procedure*, Actions § 459 (4th ed.1996). "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.... The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). Thus, plaintiff's bad faith cause of action accrued when Celtic unreasonably denied her benefits.

■ Celtic first denied plaintiff's claim in April 1997. Thus, to the extent plaintiff claims the April denial was made in bad faith plaintiff's claim is barred by the two-year statute of limitations. Celtic denied plaintiff's appeal of the denial on May 14, 1997. Again, any bad faith claim based upon that denial is also time barred. On October 30, 1997, Celtic advised plaintiff that its independent medical review board had determined that her claim was not covered. Any bad faith claim based upon that denial is also time barred since this action was not commenced until April 2000. Finally, in October 1999 Celtic agreed to again review plaintiff's claim based upon new information submitted by plaintiff. By letter dated March 13, 2000, Celtic again denied plaintiff's claim. Any claim based upon that denial is *not* time barred.

Plaintiff contends that her bad faith claim was "tolled" while Celtic continued to review her claim. Plaintiff does not cite any case that holds that a bad faith claim based upon a previous denial is tolled by the insurer's later re-affirmance of that denial. Plaintiff appears to have intended to rely upon *Walker v. American Bankers Ins. Group*, 108 Nev. 533, 836 P.2d 59 (1992). In *Walker*, the Supreme Court of Nevada held that the one-year statute of limitations for bringing suit to recover benefits under an insurance policy was tolled until the insurer denied the claim upon reconsideration of its original denial. *Id.* at 538–539, 836 P.2d 59. *Walker* does not support plaintiff's contention.

First, *Walker* involved a claim for policy benefits, not a bad faith claim.

Second, even if the Court assumes that *Walker* applies to bad faith claims, it is consistent with the Court's holding that any claims arising from the April and May 1997 denials are time-barred. In *Walker*, the court essentially held that the agreement to "reopen" the file meant there had been no previous denial of the claim; in other words, the reopening of the claim meant the denial had been vacated. *See Singh v. Allstate Ins. Co.*, 63 Cal.App.4th 135, 144, 73 Cal.Rptr.2d 546 (1998) (discussing *Walker*). Since the statute was tolled until a denial, the statute was tolled until the insurer denied the claim upon reconsideration. If the Court applies that reasoning here, plaintiff's claim was not denied until October 1997; the reconsideration vacated the earlier denials and thus there was no April or May 1997 denial upon which plaintiff could base a bad faith claim. Any bad faith denial of coverage claim would have to be based on a subsequent denial.

Of course, any bad faith claim based on the October 1997 denial is also time barred. Plaintiff responds that the claim was not actually denied in 1997; she asserts that because the October 30, 1997 letter rejecting her claim was based on a lack of substantiating evidence, Celtic was inviting further submissions and thus was

keeping her claim open. Celtic's letter does not support such an inference. In any event, even if it did, all that means is that plaintiff is not basing her bad faith claim upon the October 30, 1997 denial because, under her theory, it was not a denial. The statute of limitations bars her bad faith claim only to the extent it is based upon a denial of coverage that occurred more than two years before the lawsuit was filed.

Any claim based on the March 2000 denial of coverage is therefore not time barred. The issue then is whether a reasonable trier of fact could find that Celtic's March 13, 2000 denial breached the implied covenant of good faith and fair dealing.

## 2. No reasonable trier of fact could find that Celtic acted in bad faith

■ The Ninth Circuit recently confirmed that

> [u]nder California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage: [A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage.

*Guebara,* 237 F.3d at 992. This legal principle is known as the "genuine dispute doctrine." Courts have consistently applied the doctrine to legal disputes, that is, disputes as to the meaning of contract language. In *Guebara,* the Ninth Circuit held that the doctrine can also apply to factual disputes: "the genuine dispute doctrine should be applied on a case-by-case basis. In some cases, the application of the rule to purely factual disputes will be inappropriate. In others, investigations by a defendant's independent experts will permit the invocation of the doctrine and summary judgment for the defendant on a bad faith claim." *Id.* at 994.

The evidence in the record is insufficient to permit a reasonable trier of fact to find that Celtic's March 13, 2000 denial was unreasonable. First, an insurer is not liable for breach of the implied covenant simply because a court concludes that benefits were due under the policy. *See Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App.4th 1269, 1280–81, 31 Cal.Rptr.2d 433 (1994) ("[t]he mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability") (citation omitted); *Dalrymple v. United Servs. Auto. Ass'n,* 40 Cal.App.4th 497, 523, 46 Cal.Rptr.2d 845 (1995) ("an insurer can erroneously dispute coverage without acting in bad faith").

Second, there was and is a genuine dispute as to whether plaintiff's surgery was required to "correct" the effects her 1991 illness; that is, even under the meaning of the policy exclusion adopted by this Court there is a genuine dispute as to whether plaintiff's surgery is covered. Celtic twice sent plaintiff's claim to an independent medical review board and twice the review board found that the evidence was insufficient to support plaintiff's claim that the surgery was related to her 1991 illness. *See Fraley v. Allstate Ins. Co.,* 81 Cal. App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000) (holding that insurer did not act unreasonably by denying claim based upon opinion of experts). The fact that plaintiff waited until 1996 to have the surgery lends further credence to defendant's conclusion that the surgery was not related to her illness.

Third, Celtic's February/March 2000 reconsideration demonstrates its reasonable-

ness. Celtic was not obligated to reopen the case in response to plaintiff's lawyer's August 1999 demand letter. Nonetheless, it advised plaintiff's counsel that it would reconsider its decision if plaintiff submitted a letter from her physician substantiating her claim. After she submitted the letter Celtic promptly sent the letter, along with the entire file, for another independent medical review.

Plaintiff contends that Celtic acted unreasonably by forwarding insufficient evidence to the review board. To the extent plaintiff is referring to the October 1997 review, any bad faith claim based on that review is time barred. As of the February/March 2000 review Celtic had the records from plaintiff's surgeon, as well as the letter from her 1991 treating physician. She offers no authority that suggests why this information was so insufficient as to constitute a breach of the implied covenant of good faith and fair dealing.

She also complains that Celtic did not speak personally to her physicians, but again offers no authority that suggests that such an omission is an act in bad faith. Finally, she alleges that Celtic's Handbook requires photographs, but that Celtic never sought such evidence of her claim. Celtic's October 30, 1997 letter, however, specifically noted that one basis for the independent review board's conclusion was the lack of any photographic evidence. Since Celtic reconsidered its decision more than two years later, plaintiff had ample opportunity to submit such photographs, if any existed.

Finally, plaintiff states in her opposition that the independent medical examiners "were expected to acquiesce in the denial of coverage." She offers not a shred of evidence to support this bald assertion.

In sum, no reasonable jury could find that Celtic's March 2000 denial of plaintiff's claim was unreasonable; there was and is a genuine dispute as to whether plaintiff's surgery—which was performed five years after her 1991 illness—was needed to correct the effects of her illness.

### C. The negligence and intentional and negligent infliction of emotional distress claims

The statute of limitations for plaintiff's remaining tort claims is one year. Accordingly, the claims are barred to the extent they are based on conduct that occurred before April 1999. They are not time barred to the extent they are based on the March 2000 denial of coverage.

That denial, however, did not amount to intentional infliction of emotional distress as a matter of law for the reasons it did not constitute a breach of the implied covenant of good faith and fair dealing. Accordingly, summary judgment must be granted on that claim in its entirety.

 Summary judgment must also be granted on the claim for negligent infliction of emotional distress. "California recognizes a right to recover damages in a negligence action for serious emotional distress." *Bogard v. Employers Cas. Co.,* 164 Cal.App.3d 602, 618, 210 Cal.Rptr. 578 (1985). To prevail plaintiff must prove, among other things, serious emotional distress. *Id.* ("Just as with the cause of action for intentional infliction of emotional distress, '[s]erious emotional distress is an essential element of the cause of action for negligent infliction of emotional distress'") (citation omitted). Plaintiff has not presented evidence sufficient to permit a reasonable jury to find that she suffered severe emotional distress as a result of Celtic's alleged negligent denial of benefits in March 2000.

Celtic's only argument with respect to plaintiff's negligence claim is the statute of limitations. Accordingly, the motion for summary judgment is denied to the extent plaintiff' negligence claim is based on con-

duct that occurred within one year of the filing of the complaint. The denial is without prejudice to Celtic moving for summary judgment on a ground not presented in this motion.

### D. Estoppel/Waiver

■ Plaintiff also argues that Celtic is estopped from asserting the statute of limitations based on representations it made to plaintiff's attorney. Specifically, she alleges that her attorney's handwritten notes of an October 21, 1999 conversation with Tom Brophy, Celtic's representative, reflect "no deadlines per Brophy. This is relatively ongoing." Declaration of Roxanne Davis Jones ("Jones Decl.") ¶ 15. She also asserts that her attorney had the following March 24, 2000 telephone conversation with Brophy:

> Time limitations were again discussed and Celtic related plaintiff was not faced with any time limitations. Mr. Brophy indicated essentially that Ms. Badell had a continuing appeal process to which Celtic has responded-if Celtic turned around now and claimed the statute of limitations was not tolled Ms. Badell certainly would have a bad faith claim against Celtic.

Jones. Decl. ¶ 20.

■ An insurer may be estopped from asserting the statute of limitations as a defense where the insurer's own conduct caused the insured not to bring a timely suit. *See Vu v. Prudential Property & Casualty Ins. Co.*, 172 F.3d 725, 728 (9th Cir.1999). "To establish estoppel against the insurer, the insured must show that he reasonably relied on the insurer's conduct or representations, and that such reliance proved prejudicial." *Id.*

The October 21, 1999 "representation," could have prejudiced plaintiff only with respect to the October 30, 1997 denial of coverage. The two-year statute of limitations had already run for the April and

May 1997 denials. In any event, the evidence of attorney Jones' note from her conversation with Brophy is insufficient to support estoppel as a matter of law. Jones' declaration does not even explain what her note means. The note could mean that Brophy represented that there were no deadlines regarding plaintiff's submission of the additional documentation to Celtic as opposed to no statute of limitations for a lawsuit. It could also mean no deadlines with respect to a claim for policy benefits; Celtic does not contend that plaintiff's claim for benefits under her policy is barred by the statute of limitations. In sum, Jones' declaration is insufficient to permit a reasonable jury to conclude that plaintiff reasonably relied on Brophy's statement in not filing her bad faith claim in a timely fashion.

Brophy's alleged March 24, 2000 representation could not have prejudiced plaintiff by inducing her not to file a timely suit because the representation was made *after* the statute of limitations had run on all of Celtic's previous denials of coverage; the last denial was made on October 30, 1997—more than two years before Brophy's alleged representation.

### III. The Request for Pre-certification

In its reply defendant argues for the first time that plaintiff's claims arising from Celtic's May 3, 1999 refusal to pre-certify additional cosmetic surgery must fail because plaintiff has never submitted a claim for benefits for such surgery; thus, defendant cannot be held liable for denying benefits under the policy. Since defendant made this argument in its reply it would be inappropriate to grant summary judgment without giving plaintiff an opportunity to respond. Accordingly, the Court will not grant Celtic summary judgment on plaintiff's claims arising from the refusal to pre-certify. The Court's denial is without

prejudice to Celtic filing a motion for summary judgment that addresses such claims.

### IV. The Miscellaneous Claims

Celtic's motion for summary judgment did not address plaintiff's claims for benefits for services other than cosmetic surgery.

### V. Healthplan Services

The Court's above rulings apply equally to defendant Healthplan, except that the breach of contract and breach of implied covenant claims against Healthplan fail as a matter of law because it was not a party to the insurance contract.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part as follows:

1. Celtic's motion for summary judgment of plaintiff's breach of contract claim arising out of the August 1996 surgery is DENIED;

2. Celtic's motion for summary judgment of plaintiff's bad faith claims arising from the denial of coverage for the August 1996 surgery is GRANTED;

3. Healthplan's motion for summary judgment of plaintiff's contract and bad faith claims is GRANTED;

4. Defendants' motion for summary judgment of the intentional and negligent infliction of emotional distress claims arising from the August 1996 surgery is GRANTED;

5. Defendants' motion for summary judgment of the negligence claim arising from the August 1996 surgery is GRANTED to the extent the claim is based on

conduct that occurred more than one year before the lawsuit was filed.

**IT IS SO ORDERED.**