767 N.W.2d 301 (2009)
2009 WI App 51
John A. MITTNACHT and Theresa Mittnacht, Plaintiffs-Appellants,
v.
ST. PAUL FIRE AND CASUALTY INSURANCE COMPANY and Midwest Security Administrators, Inc., Defendants-Respondents.
No. 2008AP1036.
Court of Appeals of Wisconsin.
Submitted on Briefs November 25, 2008.
Opinion Filed March 4, 2009.
*303 On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of Timothy A. Hawley and Christina L. Peterson of Stellpflug Law, S.C., De Pere.
On behalf of the defendants-respondents, the cause was submitted on the brief of Michael R. Vescio of SmithAmundsen LLC, Milwaukee.
Before BROWN, C.J., SNYDER and NEUBAUER, JJ.
¶ 1 NEUBAUER, J.
John A. Mittnacht and Theresa Mittnacht appeal from a summary judgment granted in favor of St. Paul Fire and Casualty Insurance Company. John was injured in an automobile accident while operating his own auto during the course of his employment. He seeks uninsured motorist (UM) and medical payments coverage under his employer's commercial auto policy. It is undisputed that John's car is not a "covered auto" under the policy's UM insuring agreement, but arguably would be a "covered auto" under the separate liability insuring agreement. The trial court denied the Mittnachts' contention that WIS. STAT. § 632.32(1), (3) and (4) (2007-08)[1] requires UM coverage for all motor vehicles eligible for liability coverage. We hold that the statute does not require St. Paul to provide John with UM coverage when operating a personal car that is not described in the UM coverage section of the policy. Additionally, § 632.32(4)(b) permits the named insured to reject medical payments coverage. Here, the policy does not provide medical payments coverage to John. We uphold the trial court's grant of summary judgment and affirm.

BACKGROUND
¶ 2 On February 12, 2003, John was traveling on a business trip when he was struck on the driver's side of his vehicle by an uninsured motorist. At the time, John was employed by Polar Ware Company and Stoelting, LLC (Polar Ware). Although John was driving his personal vehicle, it is undisputed that he was operating his vehicle in the conduct of his employer's business. Polar Ware carried a commercial auto insurance policy through St. Paul, with a one-year policy period in 2003 (the policy).
¶ 3 John received UM coverage under a policy he purchased on his car from American Family Mutual Insurance Company. *304 After unsuccessfully attempting to also recover from St. Paul, the Mittnachts filed this action against St. Paul for UM and medical payments benefits under the terms of the policy issued to Polar Ware. After both parties moved for summary judgment, the trial court entered judgment in favor of St. Paul. The Mittnachts appeal.

DISCUSSION

Standards of Review
¶ 4 The interpretation of an insurance contract presents a question of law which is appropriate for summary judgment. Jessica M.F. v. Liberty Mut. Fire Ins. Co., 209 Wis.2d 42, 48-49, 561 N.W.2d 787 (Ct.App.1997). When reviewing a grant of summary judgment, we apply the same methodology as the trial court. Green Spring Farms v. Kersten, 136 Wis.2d 304, 315, 401 N.W.2d 816 (1987). We will affirm a summary judgment if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Further, statutory interpretation and the interpretation of an insurance policy present questions of law that we review de novo. Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶ 9, 293 Wis.2d 123, 717 N.W.2d 258.
¶ 5 When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." Id., ¶ 46 (citation omitted).

Issue on Appeal
¶ 6 John concedes that he was not driving a "covered auto" as defined under the UM coverage agreement of his employer's auto policy. The policy's medical payments insuring agreement does not extend to employees in their own auto. However, John argues WIS. STAT. § 632.32 mandates UM and medical payments coverage because his personal "nonowned" auto used in the conduct of his employer's business is a "covered auto" under the policy's separate liability insuring agreement.[2]

The St. Paul Policy's Uninsured Motorist Agreement Does Not Provide Coverage for an Employee's Personal Nonowned Auto
¶ 7 St. Paul's policy is made up of several Insuring Agreements, including among others, Auto Liability Protection, Uninsured Motorists Protection and Auto Medical Payments Protection. Each has its own coverage summary, and the insuring agreements each have provisions regarding "Who is Protected Under This Agreement" and "Which Autos are Covered." These provisions do not cross-reference one another, nor does one incorporate the other. The Auto Liability Protection "insuring agreement provides auto liability protection for your business." The Uninsured Motorist Protection  Wisconsin insuring agreement provides coverage for *305 "damages for bodily injury caused by an accident which the named insured or anyone else covered under this agreement are legally entitled to collect from the driver or owner of an uninsured vehicle."
¶ 8 The Uninsured Motorist Protection  Wisconsin insuring agreement provides coverage to "the named insured and other persons protected under this agreement." "Protected persons" include the named insured and, if the named insured is an organization, "[a]nyone in a covered auto."[3] If shown in the "Coverage Summary," (1) scheduled autos and (2) autos owned by the named insured are "covered autos," along with (3) autos the named insured owns for which the state requires the named insured to provide UM coverage.[4] The Coverage Summary's scheduled autos lists thirteen cars. The list of scheduled autos, which does not include John's car, designates that liability, UM and medical payments coverage is provided for each identified auto. Consistent with the third category of "covered autos" owned by the named insured, the UM coverage summary states that "owned autos subject to a compulsory uninsured motorist law" are covered autos. As noted above, the Mittnachts recognize that John's personal non-owned auto is not a "covered auto" under the terms of the UM protection agreement as it is neither an owned auto (by Polar Ware) nor a scheduled auto.

WISCONSIN STAT. § 632.32(4)(a)1., the Uninsured Motorist Statute, Does Not Require Coverage
¶ 9 WISCONSIN STAT. § 632.32(1) provides that the statute applies to "every policy of insurance issued or delivered in [Wisconsin] against the insured's liability for loss or damage resulting from accident caused by any motor vehicle...." Subsection (4)(a)1. mandates that such policies include UM coverage.[5] While the statute *306 requires that "every policy" that provides motor vehicle liability insurance also provide UM protection, neither provision mandates the scope of that protection beyond the "insured." Contrary to the Mittnachts' argument, nothing in § 632.32(4)(a)1. requires that an auto policy's UM coverage afforded to the insured shall apply to the same extent  in terms of the drivers and vehicles covered  as that afforded by the policy's auto liability coverage.
¶ 10 Meyer v. City of Amery, 185 Wis.2d 537, 518 N.W.2d 296 (Ct.App.1994), supports our conclusion that WIS. STAT. § 632.32 does not require co-extensive UM coverage with that provided under a policy's auto liability coverage. In Meyer, the claimant was injured during the course of his employment as a City of Amery police officer after he exited a city patrol car. Meyer, 185 Wis.2d at 540-41, 518 N.W.2d 296. The claimant sought UM coverage under both his personal insurance policy and the policy issued to the City. Id. at 541, 518 N.W.2d 296. The court found that the employee was not an insured, as the City was the only named insured. Id. at 544, 518 N.W.2d 296. It was assumed that the employee was not an occupancy insured (anyone else "occupying" a covered auto) because he was not in the City patrol car. See id. at 541, 542 n. 3, 518 N.W.2d 296. Thus, the UM coverage provisions, like those in this case, did not include the claimant as an insured for UM purposes.[6]See id. at 547, 518 N.W.2d 296. We held that because of the unambiguous language of the policy, "[t]o conclude otherwise would be to `insert what has been omitted.'" Id. at 544, 518 N.W.2d 296 (citation omitted).
¶ 11 We next considered whether the policy violated WIS. STAT. § 632.32(4) because it did not provide UM coverage to the employee. We noted that the coverage was not restricted as to the purchaser of the policy or the policyholder, but only as to the employees of the policyholder. Meyer, 185 Wis.2d at 545, 518 N.W.2d 296. We stated:
While Wisconsin courts have concluded that the legislative purpose behind § 632.32(4)(a) ... is to put the injured in the same position as if the uninsured tortfeasor had been insured, and in turn have concluded that UM coverage is personal and portable, there is nothing to indicate that the legislature intended this reasoning to be extended to require commercial fleet policies, where the named insured is a corporation or government entity, to include all of its employees as named insureds.

Meyer, 185 Wis.2d at 547, 518 N.W.2d 296 (emphasis added).
¶ 12 The Mittnachts' attempt to distinguish Meyer from the facts of this case fails. Namely, the Mittnachts argue that in Meyer the employee was not entitled to UM coverage because he was not occupying a covered auto, while here, John was occupying his own vehicle. However, as noted above, John's non-owned vehicle was not a "covered auto" under the UM insuring *307 agreement  just as in Meyer, the employee was not occupying a covered auto.[7] Whether the absence of coverage arises from the fact that in Meyer the employee was not a named insured and was not occupying a covered auto or, as here, the employee was not a named insured and was not occupying a covered auto is immaterial  in both situations, there is no coverage under the UM policy terms. Here, as in Meyer, we see nothing to indicate that the legislature sought to require UM coverage for employees under commercial fleet policies  whether the absence of coverage arises from the definition of the named insured (which did not include employees/ Meyer) or from the definition of "covered autos" (which did not include employees' nonowned autos/Mittnacht).
¶ 13 Meyer instructs that a limitation on UM coverage under a commercial policy does not violate WIS. STAT. § 632.32(4)(a) as long as the restriction does not apply to the purchaser or policyholder, but only to its employees. Meyer, 185 Wis.2d at 545, 518 N.W.2d 296. Given this holding, the absence of any contrary indication in the statutory language of § 632.32(4)(a), and the policy language, we conclude that the UM statute does not require UM coverage for this employee's personal non-owned auto under St. Paul's policy.

WISCONSIN STAT. § 632.32(3) Does Not Require Coverage
¶ 14 The Mittnachts also look to WIS. STAT. § 632.32(3), which addresses the scope of the required coverage. Subject to exceptions not relevant here, subsec. (3) requires that every policy of automobile liability insurance issued in this state against the insured's liability for loss or damage resulting from an accident caused by any motor vehicle shall provide that coverage (here, uninsured motorist insurance) provided to the named insured (Polar Ware) shall apply "in the same manner and under the same provisions to any person using any motor vehicle described in the policy." Sec. 632.32(3) (emphasis added).[8] Section 632.32(3) applies to both liability insurance and UM coverage. Progressive N. Ins. Co. v. Hall, 2006 WI 13, ¶ 15, 288 Wis.2d 282, 709 N.W.2d 46.
¶ 15 Under WIS. STAT. § 632.32(3), once liability or UM coverage is provided to a motor vehicle described in the policy, it applies to any person using that motor vehicle "in the same manner" (i.e., the same scope) and "under the same provisions" as that afforded to the named insured when the use is for purposes and in the manner described in the policy. (Emphasis added.) Thus, for example, the *308 same auto liability provisions apply to any person using a vehicle described under the auto liability insuring agreement. Greene v. General Cas. Co., 216 Wis.2d 152, 162, 164, 576 N.W.2d 56 (Ct.App.1997) (owner of covered auto under auto liability policy entitled to same liability coverage as that afforded named insured). Likewise, in Progressive Northern Insurance, the passenger occupying (using) the described auto (his brother's "covered auto" under the policy's UM provisions) was entitled to have coverage applied in the same manner and under the same provisions, i.e., the same primary coverage, as that afforded to his brother, the named insured. See Progressive N. Ins. Co., 288 Wis.2d 282, ¶¶ 3-5, 34, 709 N.W.2d 46.
¶ 16 Here, the motor vehicles "described" in the UM insuring agreement and coverage summary are owned vehicles and the identified scheduled vehicles. These are the "described" vehicles to which WIS. STAT. § 632.32(3) applies. Thus, the UM insurance provided to the named insured (Polar Ware) applies "in the same manner and under the same provisions" to any person using any of these described autos. The UM protection required by § 632.32(3) to these described autos does not extend to John's personal non-owned vehicle because it is not described in the UM insuring agreement.[9]
¶ 17 While the Mittnachts contend that the statutory motor vehicles "described in the policy" should be read to include "any auto" insured under the liability coverage, we do not read the statute to require the importation of a separate and broader definition of "covered auto" from the liability insuring agreement into the UM insuring agreement. Each of the auto insuring agreements has its own definition of "covered auto," thus describing which autos are included under each type of coverage. Under WIS. STAT. § 632.32(3), the UM insuring agreement's "same provisions" shall apply to any person using the identified motor vehicles in the same manner as that afforded the named insured. That agreement does not identify John's car. We decline the Mittnachts' invitation to interpret the statute to require ignoring the separate policy insuring agreements, separate definitions and separate coverages. This interpretation is not reasonable and finds no support in the statute or Wisconsin case law.[10]

WISCONSIN STAT. § 632.32(4)(b) Does Not Require Coverage for Medical Payments
¶ 18 The Mittnachts' argument with respect to medical payments under WIS. STAT. § 632.32(4)(b) also fails. Subsection (4)(b) provides:
(b) Medical payments. To indemnify for medical payments or chiropractic payments or both in the amount of at least $1,000 per person for protection of all persons using the insured motor vehicle from losses resulting from bodily injury or death. The named insured may reject the coverage. If the named insured rejects the coverage, it need not be provided in a subsequent renewal policy issued by the same insurer unless *309 the insured requests it in writing. Under the medical or chiropractic payments coverage, the insurer shall be subrogated to the rights of its insured to the extent of its payments. Coverage written under this paragraph may be excess coverage over any other source of reimbursement to which the insured person has a legal right. (Emphasis added.)
Under "Auto Medical Payments Protection," St. Paul's policy provides in relevant part: "We'll pay the reasonable costs of necessary medical services for a protected person who suffers bodily injury in an accident...." "Protected person" includes "Anyone ... in a covered auto." While "covered autos" includes "nonowned autos," the policy specifically excludes employees as protected persons if the employee owns the auto. As noted above, the medical payments statute permits the named insured to reject this coverage. Here, the policy indicates that the named insured opted to exclude this coverage for its employees. John provides nothing to establish otherwise.

CONCLUSION
¶ 19 We conclude that the UM protection and medical payments provisions in St. Paul's insurance policy issued to Polar Ware do not provide coverage for John's personal non-owned vehicle. We further conclude that neither WIS. STAT. § 632.32(3) or (4) nor Wisconsin case law supports the contention that St. Paul was required to extend UM coverage to John via its commercial auto liability policy or to provide medical payments coverage. We affirm the trial court's grant of summary judgment in favor of St. Paul.
Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.
[2] Under the Auto Liability Protection Agreement and the corresponding "Coverage Summary," "Any Auto" is a "Covered Auto[]." "Any auto" includes "nonowned" autos. "Nonowned autos" are defined to include "any auto" that "you [Polar Ware] don't own... and ... used in the conduct of your business. It includes autos owned by your employees ... [b]ut only while such autos are being used in the conduct of your [Polar Ware's] business." Because St. Paul concedes John's personal "nonowned" car is arguably insured under the liability coverage, we will assume as much for this appeal.
[3] The relevant language provides:

Who Is Protected Under This Agreement
....
Partnership, limited liability company, organization.
If the named insured is shown in the Introduction as a partnership, limited liability company, organization, or any other form of organization, then the following are protected persons:
-Anyone in a covered auto or temporary substitute for a covered auto; and
-Anyone for damages he or she is entitled to recover because of bodily injury to another protected person.
Anyone else in a covered auto. Anyone else while in an auto that's a covered auto or a temporary substitute auto is protected.
[4] The relevant language is as follows:

Which Autos Are Covered
The Coverage Summary shows which autos are covered under this agreement.
....
Scheduled autos. If this is shown in the Coverage Summary, the autos listed in the Schedule are the covered autos at the time the agreement goes into effect.
....
Any owned auto. If this is shown in the Coverage Summary, we'll cover any auto that the named insured owns.
Autos required by law to be covered. We'll cover autos the named insured owns for which the state requires the named insured to provide Uninsured Motorists Coverage will be considered covered autos.
For purposes of the policy, "[t]he words you, your and yours mean the insured named here, which is a CORPORATION[,] POLAR WARE CO & STOELTING, LLC."
[5] WISCONSIN STAT. § 632.32(4)(a)1. provides:

(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall contain therein or supplemental thereto the following provisions:
(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.
[6] The relevant UM coverage provisions considered by the court in Meyer v. City of Amery, 185 Wis.2d 537, 542-43, 518 N.W.2d 296 (Ct.App. 1994), specified:

B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."
[7] While John concedes that his car does not fall under the "covered auto" definitions of the UM insuring agreement, he repeatedly argues that his car should be covered because it is a "covered auto" under the policy. For example, he suggests that he is an "occupancy insured" in a covered auto. However, as his concession acknowledges, the definitions of "covered autos" are different in the liability and UM insuring provisions. And because his car is not a "covered auto" under the UM provisions, he is not an "occupancy insured" under that agreement either. We reject his several attempts to make insurance policy arguments by ignoring the clear distinctions between these two types of coverage and their separate definitions and provisions.
[8] WISCONSIN STAT. § 632.32(3) states, in relevant part:

(3) REQUIRED PROVISIONS. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:
(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.
[9] As John acknowledges, his non-owned vehicle under the Polar Ware policy was an "owned" vehicle under his own auto policy. Thus, as WIS. STAT. § 632.32(1) and (4) mandates, that policy included UM insurance for him  the insured. As the trial court noted, John was not an owner of the Polar Ware policy and there is no suggestion that he paid any premiums for that policy.
[10] The Mittnachts have not identified any Wisconsin case that applies a liability insuring agreement's definition of a "covered auto" (and its own identification of described vehicles) to require coverage under a separate UM agreement with its own "covered auto" definition and separately described vehicles.