**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 22, 2020**

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2008**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018SC845

**IN COURT OF APPEALS**
**DISTRICT II**

---

SETH H. KIEWIZ,

    PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

MY CUSTOM SHOP, INC.,

    DEFENDANT-APPELLANT-CROSS-RESPONDENT.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

¶1 NEUBAUER, C.J.[1] This dispute is about an "as is" sale of an eighteen-year-old Ford Ranger truck with 178,000 miles. Seth H. Kiewiz, the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

truck buyer, brought this action against My Custom Shop, Inc., (MCS), the truck seller. After a trial to the circuit court, the court determined Kiewiz had not proven any of his claims and dismissed the complaint with prejudice. We affirm.

## BACKGROUND

¶2 The basic facts are as follows. In December 2017, MCS bought the truck at an auction for about $1300. MCS repaired and improved the truck to ready it for sale.

¶3 In January 2018, Kiewiz looked under the hood and gave it a test drive. MCS told Kiewiz that it would repair or replace any of the parts that MCS had installed based on the part manufacturer's warranty. Both the purchase contract and the buyer's guide (sometimes referred to as the "sticker," which is attached to a window) stated that the sale was "as is" and disclaimed any warranty. MCS and Kiewiz agreed to a price of $3800.

¶4 Upon driving home, Kiewiz noticed a rough engine and brake issues, in addition to a previously noted transmission matter. After numerous conversations between Kiewiz and MCS, attempts by MCS to fix certain problems, and Kiewiz asking a third-party shop to evaluate the truck, an impasse developed: Kiewiz wanted a full refund, which MCS refused on the ground that it did everything it was required to do, and the sale was "as is."

¶5 In March 2018, Kiewiz commenced this action, asserting four claims: WIS. STAT. § 100.18 for misleading misrepresentations, WIS. STAT. § 218.0163(2) for fraudulent practices, WIS. STAT. § 402.314 for breach of implied warranty of merchantability, and 15 U.S.C. §§ 2308(a) and 2310(d)(1) (2018) for

violation of the Magnuson-Moss Warranty Act (MMW), which permits consumer suits for breach of warranties under certain circumstances.[2]

¶6  After a one-day trial involving five witnesses (which produced a nearly 300-page trial transcript), numerous exhibits, and arguments of counsel, the circuit court determined that Kiewiz did not carry his burden to prove any claim of misrepresentation or fraudulent practice under WIS. STAT. §§ 100.18 and 218.0163(2).[3]  In this regard, after referring to testimony indicating that MCS reasonably inspected the vehicle before putting it up for sale, that MCS test drove it some more and continued to work on it after further complaints, having conversations with Kiewiz as to the problems, the court stated, "There is no way … I can find … any fraudulent misrepresentations … or unconscionable practice."

¶7  The circuit court also appeared to determine that the evidence did not support the two warranty claims.  It stated that MCS "wasn't warranting anything," pointing out that MCS' agreement to cover any parts it installed was just a matter of passing on the part manufacturer's warranty, and that it was "clear" that, per the contract and buyer's guide, this sale was "as is."  Although the court did not specifically refer to the claim for implied warranty of merchantability, it did indicate that it saw no basis for applying MMW.

---

[2] By agreement, the circuit court dismissed Kiewiz's two additional claims (fraudulent inducement and strict liability misrepresentation) as duplicative of the other claims.  The court also dismissed MCS' counterclaim for defamation.

[3] We note that, during the course of its rulings, the court commented on the credibility of witnesses, sometimes expressing concerns, sometimes accepting the testimony, and at other times noting "there definitely are conflicts in the testimony there."

¶8   Despite concluding that none of the four claims were proved, the court nonetheless expressed "concerns" about the condition of the vehicle and, in the interest of being "fair," ordered MCS to pay Kiewiz $5500 (about the amount of the vehicle loan) and further ordered Kiewiz to return the truck. When counsel inquired under what claim the court rendered its order, it responded that it was not under the statutory claims, but was "more of a breach of contract analysis" and "[t]hat what Seth [Kiewiz] received wasn't what he actually paid for." Both parties appealed.

**REMAND FOR ADDITIONAL FINDINGS**

¶9   After reviewing the appellate record and appreciating the circuit court's attempt to untangle a knotty set of facts and fashion a principled remedy, we pointed out that the remedy had no legally-recognized claim to support it. As it stood after the trial, Kiewiz's six claims were dismissed, MCS' defamation claim was dismissed, and the court ordered a refund: Kiewiz was to return the truck for the $5500. Because the record was not clear as to the factual and legal basis for this remedy, and because we as a reviewing court cannot make findings of fact or determinations of credibility, *see* ***Wurtz v. Fleischman***, 97 Wis. 2d 100, 107 & n.3, 293 N.W.2d 155 (1980), and ***Posnanski v. City of West Allis***, 61 Wis. 2d 461, 465, 213 N.W.2d 51 (1973) (noting that credibility and weight of evidence are matters for the circuit court), we remanded, while retaining jurisdiction, the matter to allow the circuit court to set forth its specific factual and legal bases for its ruling, including its determinations with respect to the third and fourth warranty claims. ***Kiewiz v. My Custom Shop, Inc.***, No. 2018AP2008, unpublished order (WI App Sept. 20, 2019).

4

¶10     On remand, and having re-read various pertinent court documents, the circuit court held a hearing.  It made the following determinations with regard to the third claim, the implied warranty for merchantability:  based on the buyer's guide and the purchase agreement, the sale was "as-is"; MCS was passing on the manufacturer's warranty to the buyer with respect to any particular part warranted by the manufacturer, but was not otherwise warranting anything; the passing on of such warranties did not negate the "as-is" nature of the sale; the court quoted from the purchase agreement, which stated, "**AS IS—NO WARRANTY. DEALER DISCLAIMS ALL WARRANTIES INCLUDING IMPLIED WARRANT[Y OF] … MERCHANTABILITY**"; statutory law permits excluding implied warranties of merchantability under certain circumstances, including those present here; and Kiewiz was allowed to inspect and test drive the vehicle before purchase.  The court therefore concluded "there was no implied warranty here … [and] that [Kiewiz] cannot recover on [the third] claim."

¶11     The circuit court then made the following determinations with regard to the fourth claim, the MMW claim:  this claim could survive on the basis of a "written warranty," but the court found no such written warranty; and, alternatively, the claim could survive on a service contract between Kiewiz and MCS, but again the court found no service contract.  Because Kiewiz failed to meet his burden in proving a MMW claim, no recovery was available.

¶12     The circuit court noted that, although it had tried to reach a fair result at the conclusion of the trial, "there wasn't a legal basis for what the Court did," and it should have dismissed Kiewiz's complaint in its entirety with prejudice, and the court proceeded to do so.

¶13    Per this Court's September 20, 2019 order, the parties were permitted to file simultaneous briefs addressing the additional proceedings. *Kiewiz*, No. 2018AP2008, at 3.  Only MCS filed, very briefly agreeing with the circuit court's most recent decision and with its dismissal of the entire case.

## DISCUSSION

*Standards of Review*

¶14    In a trial to the court, we review the circuit court findings of fact under the clearly erroneous standard, which means the court's findings will not be reversed unless they are against the great weight and clear preponderance of the evidence.  ***Phelps v. Physicians Ins. Co. of Wis., Inc.***, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.  If need be, we will "search the record for evidence to support the court's factual findings."  ***Laughland v. Beckett***, 2015 WI App 70, ¶20, 365 Wis. 2d 148, 870 N.W.2d 466.  In addition, when a trial judge acts as a finder of fact and there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses.  ***Stevenson v. Stevenson***, 2009 WI App 29, ¶14, 316 Wis. 2d 442, 765 N.W.2d 811.  When more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the trier of fact.  ***Id.***  When presented with the interpretation of contracts and governing statutory authority, both pose questions of law we review de novo. *See* ***Mittnacht v. St. Paul Fire & Cas. Ins. Co.***, 2009 WI App 51, ¶4, 316 Wis. 2d 787, 767 N.W.2d 301.

*WISCONSIN STAT. § 100.18—Kiewiz's Misrepresentation Claim*

¶15    Kiewiz's first claim was under WIS. STAT. § 100.18, which is known as the "Deceptive Trade Practices Act," generally prohibiting sellers from making

deceptive, false or misleading representations of fact to prospective buyers.  Three elements must be established:  (1) defendant made a representation to the public with the intent to induce an obligation; (2) the representation was "untrue, deceptive or misleading"; and (3) the representation materially caused a pecuniary loss to the plaintiff.  ***K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.***, 2007 WI 70, ¶19, 301 Wis. 2d 109, 732 N.W.2d 792.

¶16    Under WIS. ADMIN. CODE § TRANS 139.04(4) (Oct. 28, 2019), used car dealers must inform prospective buyers of "all significant existing mechanical, electrical and electronic defects and damage and evidence of repair to strut tower, trunk floor pan, frame or structural portion of unibody, including corrective welds."    Section TRANS 139.04(5) requires that used car dealers inform prospective buyers of "whether or not the condition of a vehicle for sale is such that it can be legally operated at all times in accordance with [the statutes and administrative code]."

¶17    Notably, the dealer must disclose such defects that he or she can find *using reasonable care*, WIS. ADMIN. CODE § TRANS 139.04(4) and (5), and record this information on a Wisconsin Buyer's Guide to be displayed within the vehicle, § TRANS 139.04(6).

¶18    WISCONSIN ADM. CODE § TRANS 139.04(6)(a)5. provides that, "*unless otherwise agreed to in the purchase contract*, *the inspection disclosures neither shall create any warranties, express or implied*, nor affect warranty coverage provided for in the purchase contract." (Emphasis added.)  "[I]t is an unfair practice for a dealer to not remedy an item improperly reported on the guide that the dealer could have found *using reasonable care* if the buyer has notified the dealer within a reasonable time after the buyer discovered or should have

7

discovered the improperly reported item and the vehicle is made available to the dealership." ***Id.*** (emphasis added). "The dealer shall reasonably remedy or make a *good faith effort to reasonably remedy* an item improperly reported within 30 days of the buyer's notification." ***Id.*** (emphasis added).

¶19     Kiewiz relies exclusively on the buyer's guide, a document required and governed by law, arguing that the MCS's buyer's guide untruthfully represented the condition of the frame, fuel system, brakes, and transmission, and that those representations induced Kiewiz to sustain a loss as he relied on them when he purchased the truck. Kiewiz asserts, accordingly, he is entitled to his causal damages. We reject this challenge.

¶20     First, Kiewiz fails to address the above administrative code provision that squarely provides that the buyer's guide does not create a warranty. He fails to address that the disclosure requirements involve a reasonable care analysis or why these provisions would not be applicable to his WIS. STAT. § 100.18(1) claim. We will not develop the parties' arguments. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we decline to consider undeveloped arguments).

¶21     Kiewiz also fails to show how the court's rejection of his fraud claim was factually unsupported. The circuit court set forth its analysis in part as follows:

> There is no way that I think I can find based on the record that there were any fraudulent misrepresentations made here on the part of My Custom Shop or representations made with the intent to defraud or a fraudulent sale or a fraudulent misrepresentation or unconscionable practice. I just think the, I just think the evidence is lacking there. I think it's completely unsupported.

8

Again, you've got [MCS'] testimony about, I did this inspection. This is what I found. [Kiewiz] complained. [MCS] did some more things. [Kiewiz] complained. [MCS] did some more things. [MCS] test drove it. Didn't have any—no codes showed up. No check engine light showed up. And made attempts to try to rectify the problems. Fraud just isn't—it just doesn't exist here.

Unconscionable practices doesn't exist here. Misrepresentations don't exist here. So I don't believe there's any basis. I don't believe the plaintiff has met its burden of proof with respect to [WIS. STAT. §] 100.18 and [WIS. STAT. ch.] 218 claims.

¶22 These observations are supported by evidence that the inspection was reasonable, such that any information on the buyer's guide was not untrue. Also, as the court noted, repeated attempts were made to remedy reported problems. There was also evidence to support the court's questioning of the credibility of certain problems.[4]

---

[4] We note certain testimony and circumstances as found by the circuit court and which supported its conclusions. When MCS purchased the truck, it knew that it needed a lot of work. After a thorough inspection of this truck, MCS put in new brake rotors, drums, pads, shoes, lines, and rear wheel cylinders. MCS used a $15,000 Snap-On auto scanner, performing a full system scan. Every system checked out. Upon further visual inspection, MCS replaced the rear shackles, shocks, battery, air filter, oil filter, bed cover, blower motor resistor, and two door lock actuators. MCS' owner estimated it invested about $1000 in parts (not counting labor). Before the sale, MCS' owner drove the truck about once or twice a week, never seeing the "check engine light" brighten or otherwise detecting any issues. Other potential buyers test drove it, reporting no problems.

Upon Kiewiz's first viewing, he looked under the hood and saw nothing concerning. The body looked good. He did not ask that the truck be put up on a lift. After fifteen minutes of looking, he test drove it for up to twenty minutes. He noted a problem with the transmission, which he mentioned.

(continued)

¶23 Moreover, the facts support a conclusion that Kiewiz failed to show that any representation materially induced him to purchase the truck, i.e., that he read the disclosure provisions in the form buyer's guide before signing the purchase contract and relied on them. When asked, "[b]efore you actually signed the purchase contract, had you read over the Buyers Guide at all," he responded "No." Kiewiz confirmed that statement a few lines further. While he later equivocated, at no point did he identify any specific disclosure provision on the buyer's guide that induced him to purchase the truck. Instead, the only information he said he read was the "as is" provision, and he read the same provision in the purchase contract. The court noted that Kiewiz signed the buyer's guide before signing the purchase contract, but "it wasn't clear from the record whether he read it or just signed it. So I just note that that's unclear to me on the record." Thus, the facts also support the court's conclusion that Kiewiz failed to prove his claim, including that he failed to show by a preponderance of evidence that any disclosure information contained in the buyer's guide materially induced him to purchase the truck, such that it caused him to incur a loss.

¶24 Kiewiz's WIS. STAT. § 100.18 claim was properly dismissed.

---

The circuit court also noted, on a couple of occasions, some difficulty accepting everyone's testimony at face-value, pointing out, for example, that Kiewiz noted the transmission problem the first time he test drove it, and later that night noted an additional braking problem, and then within a day or two he cited engine problems. As the court stated, "So it seemed like the [three] problems multiplied in very short order. And I guess I find—I have some concerns about the credibility of that …." On the other hand, he observed that MCS, despite the multiple times Kiewiz returned with the vehicle with another problem, MCS continued to express a willingness to work with Kiewiz and figure out the problems, and there was no point at which MCS said it was "done" working with Kiewiz.

*Wisconsin Stat. § 218.0163—Kiewiz's Fraudulent Practices Claim*

¶25   For his second claim, Kiewiz asserts a fraudulent practices claim under WIS. STAT. §§ 218.0116(1) and 218.0163(2), which is in part a consumer protection statute relating to motor dealerships. *See **Kolupar v. Wilde Pontiac Cadillac, Inc.**,* 2007 WI 98, ¶20, 303 Wis. 2d 258, 735 N.W.2d 93.   Kiewiz contends that MCS "willfully defraud[ed] Kiewiz" by failing to comply with these statutory sections and, in particular, the related administrative regulations under WIS. ADMIN. CODE §§ TRANS 139.03 and 139.04.   We reject Kiewiz's claim that the circuit court erred in determining that he failed to prove this claim.

¶26   As noted previously, the circuit court, who is the prime arbiter of credibility, determined that MCS undertook substantial inspections and repairs, continued to work with Kiewiz as he continued to complain about problems, and ultimately concluded that there was no fraud or unconscionable type conduct on the part of MCS.   Again, the court's determinations are in line with the related regulations, which state the inspection disclosures do not create any warranties, express or implied, and that the dealer is not subject to claims of unfair practices if the dealer has used "reasonable care" when inspecting the vehicle.   WIS. ADMIN. CODE § TRANS 139.04(6)(a)5.; *see* § TRANS 139.04(4) and (5).

¶27   Kiewiz falls far short of successfully challenging the court's credibility-related determinations that a reasonable inspection was completed and that Kiewiz failed to prove fraud or any unconscionable practice.   We see no error in the court's conclusion that Kiewiz is therefore not entitled to any recovery under WIS. STAT. § 218.0163(2).

11

*Kiewiz's Claim that the "As Is" Language Does Not Negate the Implied Warranty of Merchantability under* WIS. STAT. *§ 402.314*

¶28    Kiewiz contends his claim for implied warranty of merchantability under WIS. STAT. § 402.314 is still viable.  His contention goes nowhere.

¶29    The very opening of the statute provides that a warranty may be "excluded or modified."  WIS. STAT. § 402.314(1).  Such an exclusion or modification of an implied warranty is expressly authorized by statute.  *See* WIS. STAT. § 402.316(1)-(3).  Indeed, para. (3)(a) of WIS. STAT. § 402.316 explicitly excludes all implied warranties with such expressions of "as is," unless circumstances indicate otherwise.  Sec. 402.316(3)(a).  In this case, the purchase contract contained the cautionary words ("**AS IS—NO WARRANTY. DEALER DISCLAIMS ALL WARRANTIES INCLUDING IMPLIED WARRANT[Y OF] MERCHANABILITY**"), the buyer's guide contained the words ("NO WARRANTY…. this vehicle is sold AS IS"), and MCS' website at the time announcing its business, concluded with, "All vehicles sold As-Is."  Wisconsin's administrative code states that the buyer's guide does not create a warranty, unless otherwise provided.  *See* WIS. ADMIN. CODE § TRANS 139.04(6)(a)5.  Both the buyer's guide and the purchase contract made clear that the sale was "as is."  The circuit court did not err in concluding that the "as-is" language precludes any implied warranty.

*Kiewiz's Claim that the Magnuson-Moss Act, 15 U.S.C. § 2308(a), Precludes Application of the "As-Is" Language*

¶30    Kiewiz attempts to use MMW to get around the obstacles of state law.  He asserts, in this regard, MMW prohibits dealers from disclaiming warranties and service contracts under 15 U.S.C. § 2308(a).  We reject the argument.

¶31     The prohibition pertains to "written" warranties.  ***Tang v. C.A.R.S. Prot. Plus, Inc.***, 2007 WI App 134, ¶53, 301 Wis. 2d 752, 734 N.W.2d 169; *see* 15 U.S.C. § 2308(a) (no implied warranty may be disclaimed or modified if the dealer provides a "written warranty to the consumer").  The service contract must also be in writing.  ***Tang***, 301 Wis. 2d 752, ¶53.  As already discussed, there is no written warranty, beyond the "pass through" warranty provided by MCS.[5]  The state regulations provide that the buyer's guide is not a warranty.  The circuit court, on remand, made these findings, we see no error within them, and Kiewiz did not offer any rebuttal.  No costs to either party.

    *By the Court*.—Order affirmed.

    This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] Kiewiz does not identify any part subject to the "pass through" warranty that is problematic.